| | |
|---|---|
| 95 | 418 |
| 95 | 451 |
| 95 | 630 |
| 95 | 418 |
| 96 | 155 |
| 95 | 418 |
| d98 | 77 |
| 95 | 418 |
| 99 | 809 |
| 95 | 418 |
| 100 | 359 |
| 95 | 418 |
| e101 | 350 |
| 95 | 418 |
| 106 | 416 |
| f106 | 695 |
| 106 | 773 |
| 95 | 418 |
| 107 | 729 |
| 107 | 742 |
| 95 | 418 |
| f109 | 299 |
| 109 | 661 |
| 95 | 418 |
| 110 | 43 |

# Richmond.

## ATLANTIC & DANVILLE RAILWAY CO. v. REIGER.

### DECEMBER 2, 1897.

### Absent, Harrison, J.

1. CHANGE OF VENUE—*Prejudice.*—In an action against a railroad company to recover damages for a personal injury, the fact that a prejudice exists against the company in the city in which the action is pending because the company had removed its shops from the city and abandoned the city as a terminal, in violation of a contract with the city, is not sufficient to justify a change of venue of the action, especially when the witnesses by whom the feeling against the company is shown express the opinion that a perfectly fair and impartial jury to try the case can be gotten in the city.

2. CHANGE OF VENUE—*Prejudice Against Corporations.*—In an action against a corporation a juror cannot be asked on his *voir dire* whether he is prejudiced against corporations.

3. BILL OF EXCEPTION—*Failure to Show What Answer Expected to Question—Examination on Voir Dire.*—Where a question is asked a juror on his *voir dire* which he is not permitted to answer, the action of the trial court will not be reviewed in the appellate court unless the bill of exceptions shows what answer was expected, or what the party proposed to prove by the juror.

4. EVIDENCE—*Examination of Witness—When a Second Cross-Examination Refused.*—After a witness has been examined, cross-examined, and re-examined, it is not error to refuse to permit a second cross-examination, if no new matter has been brought out on the re-examination.

5. EVIDENCE—*Examination of Witness—When Further Cross-Examination Refused.*—If, after a trial court has permitted a second cross-examination of a witness, it sees that it has granted a privilge which ought not to have been granted, or which is being abused, or that a further exercise of the privilege can serve no useful purpose, it may revoke the privilege and put an end to the further examination of the witness.

6. EVIDENCE—*Examination of Witness—When Further Examination may or may not be Denied.*—Where a party is exercising an absolute right, and not a mere privilege, the trial court must know what a ques-

tion is before it can decline to permit it to be asked. But if the party is exercising a mere privilege accorded by the court, it is not reversible error for the trial court to recall the privilege and refuse to permit the witness to be further cross-examined, when done under circumstances like those in the case at bar.

7. RAILROADS—*Public Crossings—Sounding Whistle—Negligence—Presumption.*—The failure of a railroad company to sound the whistle of its locomotive in the manner prescribed by law on approaching a highway crossing is negligence, and if a traveller on the highway is injured, there is some presumption that the injury was caused by the neglect, unless the traveller's own fault is manifest. Such negligence, however, does not entitle the traveller to recover, unless it was the cause of the injury. Whether it did cause the injury or not is to be determined by all the facts and circumstances of the case.

8. RAILROADS—*Public Crossings—Failure to Sound Whistle—Negligence of Traveller.*—Although a crossing signal required by law was not given, yet if a traveller injured at such crossing knew, or by the exercise of ordinary care ought to have known, that a locomotive was approaching, in time to have avoided the injury, he cannot recover.

9. RAILROADS—*Public Crossings—Failure to Sound Whistle—Other Warnings—Negligence of Traveller.*—Although a railroad company may have failed to sound the whistle of its locomotive, on approaching a public crossing, in the manner prescribed by law, yet if it gave another or other warnings, which in fact notified the plaintiff who was injured at the crossing of its approach, or which would have given him notice if he had been exercising ordinary care, so that he could have avoided the injury complained of, he cannot recover. But it is error to leave it to the jury to determine whether sounding the whistle at some other place or in some other manner than that prescribed by the statute was equally as good.

10. DECLARATION—*What Amount of Negligence in Running Trains is sufficient as Against a Traveller on Public Highway.*—In an action against a railroad company to recover damages for a personal injury alleged to have been inflicted at a public crossing, in consequence of the negligent management, conduct, and running of defendant's locomotives, it is not necessary in the declaration to aver all the facts and circumstances constituting the negligence. Under a general averment of negligence in the management, conduct, and running of its locomotives, the plaintiff had the right to prove any fact or circumstance tending to show that the defendant was negligent as to travellers in the running of its locomotives at that particular time and place, such as that no whistle was blown, bell rung, or lookout kept, and the absence of a gateman, or safety-gates, and the like.

11. INSTRUCTIONS—*Hypothetical Case—Defining Duty of Plaintiff or Defendant only.*—Where the object of an instruction is merely to define the duty of the defendant arising out of a supposed state of facts, and it does not purport to contain a complete hypothesis on which a plaintiff suing for injuries caused by alleged negligence is entitled to recover, it is not necessary to refer to the duty or supposed negligence of the plaintiff. But if the defendant asks an instruction which correctly propounds the law as to the duty of the plaintiff, though it makes no mention of defendant's duty, it should be given. The two together constitute the law of the case on that point.

12. RAILROADS—*Public Crossings—Obstructed View—Care Required of Traveller and Company Respectively.*—If the view of a train approaching a railroad crossing is obstructed by cars left standing on a side track, it is the duty of the railroad company, in the running of its trains, and also of the traveller in approaching the crossing, to use a higher degree of care than if no such obstruction existed.

13. ASSIGNMENTS OF ERROR—*Grounds of Objection not Stated.*—This court will not consider assignments of error for which no grounds of objection are stated, either in the petition for the writ of error or in the brief of counsel.

Error to a judgment of the Hustings Court of the city of Portsmouth rendered October 31, 1895, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Alfred P. Thom,* for the plaintiff in error.

*Murdaugh & Marshall,* and *Burroughs & Bro.,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Under the decisions of the court in the cases of *B. & O. Railroad Co.* v. *Sherman,* 30 Gratt. 602, 606; *N. & W. Railroad Co.*

v. *Harman*, 83 Va. 553, and *Seaboard & Roanoke Railroad Co.
v. Joyner*, 92 Va. 354, each count in the decaration was suffi-
cient, and the demurrer thereto was properly overruled.

The defendant made a motion (which was overruled) to have
the cause removed, under section 3316 of the Code, from the
Corporation Court of the city of Portsmouth to the Circuit
Court of the county of Norfolk, on the ground that a general
prejudice or ill feeling existed in that city against the defen-
dant. The evidence offered to sustain the motion showed that
the Atlantic & Danville Railway Company had entered into a
contract with the city of Portsmouth, by which, in consideration
of a subscription of $150,000 of the bonds of the city to the
stock of the railroad company, it had agreed to make its tide-
water terminus in the city, and there locate and maintain its
general offices and shops; that afterwards, when the works and
property of the railroad company were sold under proceedings
to foreclose a mortgage thereon, a new company (the defendant)
was formed, with the same name as the old company; that it re-
moved the terminus, offices, and shops from the city of Ports-
mouth, claiming that it was not bound by the contracts of its pre-
decessor; that the city had thus lost the consideration for which
it executed its bonds; and that by reason of this action of the de-
fendant company there was great prejudice, or, rather, a wide-
spread feeling of indignation, against it.

The fact that such a feeling existed in a community against
one of its citizens, or a corporation which had done or was doing
business there, might be sufficient to show the difficulty, if not
the improbability, of getting an impartial jury from among its
citizens to try a cause involving the conduct which produced the
indignation; but it does not show a sufficient ground for the re-
moval of a cause in which the same person is one of the parties,
when the case does not involve, or have any connection with,
the conduct which produced the indignation; and especially is
this so when the witnesses by whom the feeling against the party
is shown express the opinion that a perfectly fair and impartial
jury can be had in the city to try the case.

The court, upon overruling the motion for a change of venue, directed a special jury to be summoned; and from those summoned a jury was obtained, free from legal objection. It was held in *Wright's case,* 33 Gratt. 880, and in *Joyce's case,* 78 Va. 278, that, where a motion to change the venue has been made and overruled, the fact that a jury free from legal objection was afterwards obtained was conclusive evidence that the motion was properly overruled. Whether the court can properly look to subsequent proceedings in the cause to determine whether such a motion was properly overruled, it is not necessary to decide in this case, as the action of the court was clearly right upon the evidence before it when the motion was heard and decided.

While Jesse C. Bain, one of the persons summoned on the special jury, was, by permission of the court, being examined by counsel, in the presence of the court, on his *voir dire,* to ascertain whether or not he was free from just cause of exception, counsel for defence asked him whether he was prejudiced against corporations, but the court refused to permit the question to be answered. This action of the court is assigned as error.

This was not, in our opinion, a proper question to be asked in an examination of a juror on his *voir dire.* Code, section 3154. See *Richardson* v. *Planters Bank of Farmville,* 94 Va. 130; 1 Thomp. Trials, 73; *Balbo* v. *People,* 80 N. Y. 484, 498. But if we were, it does not appear that any injury resulted to the defendant from the court's refusal to permit it to be answered. Where a question is asked, and the witness is not permitted to answer it, in order to have the court's action reviewed by an appellate court the record must show what the party expected or proposed to prove by the witness. The same rule applies in the examination of a juror on his *voir dire;* the reason being in both cases that a judgment will not be reversed because evidence has been excluded or rejected by the trial court, unless its materiality be made to appear. *Union Central Insurance Co.* v.

*Pollard*, 94 Va. 146, and cases cited; *Com.* v. *Trefethen*, 157 Mass. 180 (24 Lawyer's Reports An. 235, 243).

The record not only fails to show that the defendant did expect, or had any reason to expect, an affirmative reply to his question, but it tends to show that the witness, if permitted to answer, would have replied that he had no such prejudice.

Assignment of error No. 4 is based upon bill of exceptions No. 3, which is as follows (omitting the formal parts):

"After the jury were sworn to try the issue joined in this case, and the plaintiff had introduced, as a witness to sustain the issue on his part, one F. S. Hope, and he had, after the first cross-examination by defendant's counsel, been re-examined by plaintiff's counsel, and was, notwithstanding the objection of counsel for plaintiff, by permission of the court, being re-cross-examined by counsel for defendant, as will appear from a transcript of his testimony included in bill of exceptions No. 11, which is hereby referred to and made a part of this bill of exceptions, the defendant's counsel undertook to ask the witness a question, which the court, without knowing what the question was, would not permit the counsel for the defendant to ask. And thereupon counsel for defendant asked permission to state the question to the court, in order that the court might determine whether or not the question was a proper one to be asked, but the court refused to permit the counsel for the defendant to state the question to the court, on the ground, as stated by the court, that counsel had already cross-examined the witness, and turned him over to the plaintiff. To which counsel for defendant replied that this question was to be asked after the court had permitted counsel for the defendant to begin a re-cross-examination, and was to be in connection with the substantial merits of the case, as claimed by counsel for the defence. But the court would not hear the question, to ascertain whether or not it was pertinent to the real merits of the case, or whether or not it was pertinent to the question of re-cross-examination which had been begun. To which the court replied that the re-cross-examination allowed counsel

for the defence was in answer to a point raised by the plaintiff; the court understanding at the time that the question sought to be asked was not upon the point upon which the re-cross-examination had been opened, but the court not knowing such to be the case, and not allowing counsel for defendant to state the question to the court, to ascertain whether or not such was the case."

Ordinarily a party cannot, as a matter of right, re-cross-examine a witness. Were it otherwise, it is obvious that it would lead to great abuses, in harassing witnesses and protracting trials.

Where a witness has been examined, cross-examined, and re-examined, unless there be new matter brought out upon the re-examination, the examination of the witness ought ordinarily to be considered as closed. But, if the court suffer new matter to be brought out upon the re-examination, an opportunity ought to be given to the opposite party to interrogate the witness as to the new matter.

In this case no new matter was brought out by the re-examination. It was strictly in reference to matters as to which the witness had been cross-examined. If the court, when the plaintiff objected to a re-cross-examination, had sustained the objection and refused a re-cross-examination, it would hardly be contended that such a ruling would be erroneous, or that it was not a proper exercise of the discretion of the court in the conduct of the trial. If, however, after it had overruled the plaintiff's objection, and permitted the defendant to commence his re-cross-examination, it saw that it had granted a privilege which ought not to have been granted, or which was being abused, by going over that which had already been fully gone over, or that a further exercise of the privilege could serve no useful purpose in the case, there would seem to be no good reason why it should not put an end then and there to a re-cross-examination which, in the first instance, it would clearly have had the right to have refused altogether.

Where a party is exercising an absolute right, and not a mere privilege, the court must know what his question is, before it can refuse to permit him to ask it; but if he is exercising a mere privilege, which the court has the right to refuse, or, having granted, has the right to withdraw, however much its refusal to hear the question may offend against judicial propriety, it is not reversible error, when done under circumstances like those presented by the record in this case.

The court did not err in permitting Mrs. Ironmonger and Mr. and Mrs. James, witnesses who had testified in chief for the plaintiff, to be recalled by him in rebuttal. Mrs. Ironmonger and Mrs. James were in the buggy with the plaintiff when he was injured. The defendant introduced a witness who testified that immediately before the accident occurred he heard a conversation between them (or one of them) and the plaintiff which tended to show that he (the plaintiff) was guilty of contributory negligence when he drove upon the railroad track. They were introduced to prove, and did testify, that there was no such conversation as that described by the defendant's witness. Mr. James was introduced in rebuttal to prove that Mrs. James, one of the plaintiff's witnesses, had not made certain statements which witnesses of the defendant stated that she had made in conversation with them when he was present.

The evidence objected to was clearly in rebuttal, and properly admitted.

The plaintiff moved the court to instruct the jury "that if they should believe from the evidence that the whistle was not, at least twice, sharply sounded, at a distance not less than three hundred yards before the highway crossing referred to in the plaintiff's declaration was reached, and that such failure to so sound the whistle at such distance tended to cause the accident complained of in said declaration, then the defendant, the Atlantic & Danville Railway Company, is liable for all damages caused by such neglect, and they must find for the plaintiff, unless they believe from the evidence that the plaintiff, by his own

negligence and recklessness, directly and proximately contributed to the act which caused the injury."

The defendant objected to the instruction unless the court would modify it by adding: "But the court further instructs the jury that in order to find a verdict against the defendant for not having sounded its whistle, if such was the case, at a point not less than three hundred yards before reaching the highway crossing, the jury must believe that the failure to sound its whistle at such point was the cause of the accident; but if the jury believe from the evidence that a proper crossing signal was given at a point nearer the crossing, and that such signal, under the circumstances of the case, was as good a notice of the approaching locomotive as it would have been if it had been given at a point not less that three hundred yards from the crossing, then the accident is not traceable to the failure to give the signal at the point not less than three hundred yards before reaching the crossing."

This the court declined to do, and gave the plaintiff's instruction as asked for.

If the defendant failed to sound the whistle of its locomotive in the manner set out in the instruction, it was guilty of negligence, for the statute (act approved March 5, 1894; Acts 1893-94, pp. 827, 828) is imperative that the whistle shall be so sounded. The object of the statute, as stated in its title, was to protect human life; and, as the injury to the plaintiff was especially such a one as the sounding of the whistle was intended to prevent, some presumption arises that the injury was caused by the neglect, unless the plaintiff's own fault was manifest. Cooley, Torts (2d ed.) 799; Shear. & R. Neg., section 469; 3 Elliott, R. R., section 1155. But such negligence of the defendant does not entitle the plaintiff to recover, unless it was the cause of his injury. Whether it was or not was to be determined from all the facts and circumstances of the case. Although the whistle did not blow as required, yet if the plaintiff knew, or by the exercise of ordinary care ought to have known,

that the locomotive was approaching, in time to have avoided the injury, he was not entitled to recover. It was not necessary, in order to defeat his recovery, that "recklessness" should have characterized his conduct in going upon the track when he was injured; and the instruction is erroneous in so stating. The failure to exercise ordinary care was sufficient to defeat it.

The addition to the instruction asked for by the defendant was properly refused. The defendant had the right to have the court instruct the jury, either by an addition to that instruction or by an independent instruction, that, although they might believe that the defendant had failed to blow the whistle as required by law, yet if the defendant gave another or other warnings, which in fact notified the plaintiff of its approach, or which would have given him notice if he had been exercising ordinary care, so that he could have avoided the injury, he was not entitled to recover. But it was not proper to leave to the jury the question of determining whether the sounding of the whistle at some point less than 300 yards from the crossing was as good a notice of the approaching locomotive as that required by the statute. The legislature had determined where the whistle was to be sounded, and it was not for the court or the jury to determine that sounding it at some other place, or in some other manner, was equally as good. The question which the jury had to determine was not whether one kind of warning was as good as another, but whether, under all the circumstances of the case, although the defendant may have failed to sound the whistle in the manner required by statute, the plaintiff's injury was proximately caused by the defendant's negligence.

The defendant moved the court to instruct the jury "that the plaintiff, Francis Rieger, is complaining of the defendant in this case for the alleged careless and negligent management, direction, or running of its locomotive engine on the occasion mentioned in the declaration; and unless the jury believe from the evidence that the defendant, or its agent or agents, did carelessly or negligently manage, direct, or run its said engine, and thereby

cause the accident, they must find for the defendant, even
though they may believe that it was negligent in the defendant
not to keep a flagman or safety gates at the crossing in question."

The reason assigned in the petition and brief why the court
erred in refusing to give that instruction is that the plaintiff was
confined to the allegations in the declaration, and that he could
not recover upon any other ground of negligence than that
stated in his pleadings, which was that of negligently managing,
directing, and running its locomotive engine.   It is true that he
could not recover upon any other ground than that of negli-
gently managing, conducting, and  running its locomotive.
*Echles* v. *N. & W. Railroad Co.*, 25 S. E. 545.   But it was not
necessary to aver in the declaration all the facts and circum-
stances by which he expected to show the negligence charged.
Without averring it, he had the right to show, if he could, that
the whistle was not blown, nor the bell rung; that no lookout
was kept; that the track was obstructed; that the locomotive was
running very rapidly; the absence of a gateman or safety gates—
or any other fact or circumstance which tended to show that the
defendant was negligent in the running of its locomotive at that
particular time and place, as to travellers.   *Lesan* v. *Railroad
Co.*, 77 Me. 85; 3 Elliott, R. R., section 1157.

If it was intended by the instruction to say to the jury that
they could not consider, along with the other facts and circum-
stances of the case, the fact that the defendant did not keep a
flagman or safety gates at the crossing, in determining whether
or not the defendant was negligently managing and running its
locomotive when the plaintiff was injured, it was erroneous.   If,
on the other hand, the instruction be construed as admitting that
this circumstance could be considered along with the others, and
that if the jury believed from all the evidence in the case that
the defendant did not negligently cause the plaintiff's injury,
then the last clause of the instruction was unnecessary, and
could have no other effect than to mislead the jury.

The court did not err in refusing to give the instruction.

The defendant asked the court to give the following instruction which was refused: "The court instructs the jury that, even though they may believe from the evidence that a view of the track on which the defendant's engine was approaching the crossing was partially obstructed by cars left standing on the side tracks, yet that fact did not lessen the caution required of the plaintiff in attempting to cross, but, on the contrary, imposed on him a higher degree of caution."

By instruction No. 5 given for the plaintiff, the jury were informed that, if the view of an approaching train was obstructed as a traveller approached the crossing, a higher decree of care was required of the defendant in the running of its trains than if there had been no such obstructions; but it contained no statement that the plaintiff, under like circumstances, was also held to a higher degree of care. Nor was it necessary that it should contain the latter statement, although it was as clearly the law as was the former statement; for where the object of an instruction is merely to define the duty of the defendant arising out of a supposed state of facts, and it does not purport to contain a complete hypothesis on which a plaintiff suing for injuries caused by alleged negligence is entitled to recover, it is not necessary in such an instruction to refer to the duty or supposed negligence of the plaintiff. *Railroad Co.* v. *Avery*, 109 Ill. 314; 2 Thomp. Trials, section 2328. When, however, the defendant comes to ask for an instruction as to the increased care of the plaintiff under the same or a similar supposed state of facts as that upon which the plaintiff's instruction was based, it has the right to have its instruction given without adding to it what its own duty was under like circumstances, and for the same reason. But if it were true, as the plaintiff's counsel insists, that the instruction was objectionable because it did not contain the whole law of the case upon the subject, his own instruction was defective in that rspect, and the defendant's objection to it ought to have been sustained, or the court ought to have amended it by adding to it what the plaintiff's duty was

under like circumstances, or supplied the defect by giving the defendant's instruction. But we are of opinion that the defendant's instruction was clearly a proper instruction, and that the court erred in rejecting it.

The action of the court in giving instructions copied into bill of exceptions No. 8 is assigned as error, but, as no ground of objection is stated either in the petition or brief of the defendant company, that assignment of error will not be considered.

It follows from what has been said that the judgment complained of must be reversed, the verdict set aside, and a new trial awarded, to be had in accordance with the law and views expressed in this opinion.

*Reversed.*