# Richmond.

## SOUTHERN RAILWAY COMPANY v. JONES.

### January 17, 1907.

1. RAILROADS—*Grade Crossings—Failure to Give Signals—Negligence.*—
The failure of a railroad company to sound the whistle of its
locomotives in the manner required by law, on approaching a
highway crossing, is negligence, and, if a traveler on a highway
is injured, the presumption is that the injury was caused by the
neglect, unless the traveler's own fault is manifest. But whether
such failure caused the injury or not is to be determined from
all the facts and circumstances of the case.

2. RAILROADS—*Grade Crossings—Obstructed View—Look and Listen.*—
It is the duty of a traveler on the highway about to cross a rail-
road at grade to look and listen for trains in both directions, and
if the view is obstructed a higher degree of care is imposed upon
both the traveler and the railroad company than if no such ob-
struction existed. This duty to "look and listen" is a continuing
duty to be exercised at a time and place when it will be reason-
ably effective, and if there is any point at which by looking and
listening, a person injured could have avoided the accident, and
he failed to do so, then his contributory negligence defeats a re-
covery for the injury. If he could have seen an approaching
train, but failed to do so, then he failed to discharge the duty
which the law imposes. In the case at bar the plaintiff, at a dis-
tance of forty feet from the track, could have seen down the
track in the direction from which the train which injured him
approached, a distance of seven hundred and twenty feet.

Error to a judgment of the Circuit Court of Amelia county
in an action of trespass on the case. Judgment for the plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*Munford, Hunton, Williams* and *Anderson,* for the plaintiff
in error.

Opinion.

*M. P. Bonifant* and *Meade Haskins,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

This action was brought by J. O. Jones, Jr., by his father and next friend to recover damages of the Southern Railway Company for injuries alleged to have been sustained by reason of the negligence of the defendant company in the operation and management of one of its through passenger trains, commonly known as the "vestibule." Upon the trial of the cause the defendant company demurred to the evidence; its demurrer was overruled, and a judgment rendered in favor of the plaintiff for $1,000, the amount of damages ascertained by the jury subject to the ruling of the court on the demurrer to the evidence. To that judgment this writ of error was awarded.

The accident out of which the suit arises occurred on the 26th of July, 1902, when the plaintiff, a young man of approximately fifteen years of age, was crossing the defendant company's right of way and tracks at a public crossing situated a short distance west of the depot at Mattoax station, in Amelia county. It appears that he was traveling in a two-horse vehicle and was driving the team himself, he being the only occupant; that he had been that morning entrusted by his father with his two-horse wagon for the purpose of driving from his home nine miles to Mattoax station, for the purpose of carrying a young lady of the family to the station, and to get a load of goods for the return trip. After securing his goods from the depot he started on his return trip, and at the crossing over which he had a short time before passed his wagon was hit by the train in question, and he received the injuries of which he complains, which though painful were not serious. The county road along which plaintiff was traveling approaching the crossing from the south strikes the railroad at right angles and on a level. On the right side of the crossing, at the time of the accident, was a

rick or stack of cord wood, which extended along the line of the railroad's right of way some distance in an easterly direction. By measurement this rick or stack of wood was about forty feet from the main line of the railroad, and there was a space between the eastern edge of the county road and the end of the rick of wood nearest thereto of at least fifty feet. The train was accustomed to pass Mattoax each day at about 3:30 o'clock P. M., but did not stop at that station and moved at a schedule rate of about forty miles an hour. The crossing is situated about 400 yards west of the station, and it was usual and proper to sound the station signal some time previous to the crossing signal, the crossing signal being located about 100 yards east of the station and therefore about 500 yards from the crossing. On the day of the accident this train coming from Richmond passed Mattoax station about ten minutes late, perhaps a few minutes later, but it does not appear that it was running at a greater rate of speed than was usual in the running of a train of its character and schedule.

The plaintiff based his right of recovery on the grounds: (1) That the employees of the defendant company failed to blow the crossing signal whistle, as required by the statute, on approaching this crossing, or to give timely warning by the ringing of its bell; (2) that the train was running at an excessive rate of speed, instead of at from twenty to twenty-five miles an hour; (3) that the defendant company permitted the cord wood to be racked on its right of way so as to obstruct the view of persons approaching the track.

The statute in force when this accident happened fixing upon railroad companies the duty of giving a signal before reaching a public highway crossing, provided that the whistle should be sounded at a distance of not less than 300 yards before reaching the crossing. Acts, 1893-'94, page 827. The present statute fixes a distance of not less than 300 yards nor more than 600 yards as the space within which the signal must be sounded, but the later statute has no application here. As to whether

or not the employees of the defendant company failed to give the statutory signal on the approach to this crossing where plaintiff's wagon was struck, or to give other timely warning, the evidence, as is usual in such cases, is not harmonious.

Conceding that the defendant company failed in some duty it owed the plaintiff and was, therefore, guilty of negligence, was not the proximate cause of the accident in which he sustained the injuries for which he sues his own contributory negligence? The evidence does not justify the conclusion that the crossing is a dangerous one. The matters alleged in his declaration and testified to by the plaintiff and other witnesses in his behalf, accepted as true, established merely a condition there with respect to the view of approaching trains which at most imposed a higher degree of care alike upon the traveler upon the highway and the defendant company. The only obstruction of the view of approaching trains complained of is the rick of cord wood referred to. It was placed there by W. L. Mason, one of the witnesses for the plaintiff, upon the land of H. E. West, leased to Mason, and "partly on the railroad land." Mason describes in detail the location of this wood, and puts it at the nearest point more than a car-length (forty or fifty feet) from the public highway, and thirty or forty feet from the main line of the railroad. His testimony in no way conflicts with, but fully corroborates, that given by Burton Marye, civil engineer, introduced on behalf of the defendant company, who had made a map of the crossing and its surroundings, and taken measurements of the distances, etc., introduced in evidence, and by this evidence it is established that had the plaintiff looked at a point forty feet from the main line he could have seen an approaching train down the track 720 feet, and that the nearer he approached the main line the further east and down the track he could see the approaching train. That the plaintiff could have seen the approaching train from a point at least forty feet from the main line is nowhere contradicted in the record. According to the uncontradicted proof, even at twenty feet from the main track,

he was in a place of safety. Before reaching the main line
he had to cross the sidetrack, which from the evidence of his
own witness is twelve feet from the main line. It is nowhere
claimed that the plaintiff was not of an age and of ample intel-
ligence to render him capable of appreciating the dangers of the
crossing, if any there were. The view of the approaching train
being obstructed by the rick of wood, a higher degree of care
was imposed upon him, as well as upon the defendant company,
than if the obstruction had not existed, the degree of caution
required of both parties being in proportion to the danger caused
by the obstruction. *A. & D. R. Co.* v. *Rieger,* 95 Va. 418,
28 S. E. 590; *So. Ry. Co.* v. *Aldridge,* 100 Va. 142, 43 S.
E. 333.

It is true that the failure of a railroad company to sound the
whistle of its locomotive in the manner prescribed by law, on
approaching a highway crossing is negligence, and if a traveler
on a highway is injured there is a presumption that the injury
was caused by the neglect, unless the traveler's own fault is
manifest. But whether it caused the injury or not is to be
determined from all the facts and circumstances in the case. 2
Wood on Railways, 1319; *A. & D. R. Co.* v. *Rieger, supra.*

The plaintiff in this case lived within nine miles of Mattoax,
and had lived there about nine years; had been to the station
at Mattoax many times, driving by himself and with others,
and on the morning of the accident had been over the crossing
on his way to the station. He was, therefore, familiar with the
conditions existing there—whether a dangerous crossing or not—
but if this had been his only experience and his first knowledge
of the conditions at the crossing it clearly appears that he under-
stood and appreciated that the railroad tracks were themselves
a proclamation of danger. He approached the crossing from a
hill, down rather a steep grade going from Mattoax station,
more or less parallel to the line of the railroad, and at a point
seventy-five feet from the crossing he stopped, where his view
of the track was obstructed by the cord wood, to look and listen.

After taking this, his only precaution, he drove forward, and though for a space of at least forty feet which intervenes between the track on which he was struck and the point from which he could see down the railroad track a distance of over 700 feet his evidence does not disclose that he even looked for an approaching train. In fact, it is nowhere suggested in his testimony when he got where by looking he could have seen the approaching train he adopted such a precaution. All that appears in his evidence as to precautions taken by him appears in his statement: "I stopped in about twenty-five yards of the crossing and listened, and didn't hear anything at all of the train. I couldn't see; the wood was piled up for I don't know how far up the track, and I started on across the track."

It is a well established principle that the duty to look and listen imposed upon a traveler on a highway approaching a railroad crossing is a continuing duty, and if there is any point at which, by looking and listening, a person injured could have avoided the accident, and he failed to do so, then his contributory negligence defeats a recovery for the injury. If he could have seen and did not see an approaching train, then he failed to discharge the duty which the law imposes.

"The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective. He must not approach the track at such a rate of speed that when he reaches a point where he can see or hear the train it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross or in crossing the track, and care is never ordinary unless it is proportionate to the known danger." *Stokes* v. *Southern Ry. Co.,* 104 Va. 819, 52 S. E. 855, and authorities cited.

In the case just cited the facts were very similar to the facts in the case at bar, and the demurrer to the evidence was sustained. The grounds of negligence relied upon were failure to give proper signals at the approach to the crossing, excessive

speed, and the negligence of the defendant company in allowing
bushes to grow on the right of way near the crossing, so as to
obstruct the view of travelers approaching. After a recital of
the facts the opinion by Buchanan, J., says: "The crossing is
a dangerous one, and Mr. Stokes, who lived in the neighborhood
and was on his way to the mill, knew this. The county road
crosses the railway track a little obliquely in a cut, which ex-
tends some distance both north and south of the crossing. . . .
An approaching train could not be seen from the point 200 feet
from the railway track where Mr. Stokes stopped his wagon, nor
could it be seen until he reached the 'cut-off' sixty-five feet from
the crossing, at which point he could see along the railway sev-
enty-five feet." Continuing, the opinion says: "The uncon-
tradicted evidence of the engineman is that when within 100 or
150 yards of the crossing he saw Mr. Stokes and his team, when
the mules were about twenty-five or thirty feet from the track,
and that Mr. Stokes looked at or towards him. If Mr. Stokes
saw the approaching train, as the engineer testifies, then it was
clearly his duty to have kept off the railway track. If he did
not see the approaching train he could have seen it if he had
been in the exercise of due care. The track itself was a procla-
mation of danger, and it was his duty, before going upon it,
to use his eyes and ears—to look and listen—and to do so when
and where his looking would be reasonably effective."

In the case at bar, as we have seen, the plaintiff could at a
point at least forty feet from the track have seen the approach-
ing train for 700 feet or more, and the engineer says: "When I
saw the crossing I saw this young fellow Jones. His horses
were just about to get on the crossing, and he was looking
right straight at the train, as straight as I am looking at one of
these gentlemen now, lashing his horses as hard as he could."

Not only is this statement of the engineer uncontradicted,
but the plaintiff himself says: "When I got on the main track—
I could just see up the railroad—and I looked up and saw the
train about seventy-five yards off; I raised the lines and whipped

one horse, and before I could give the other one a lick the train struck the wagon and knocked me up to the telegraph wires." Here again it is to be noted that he made no claim to having listened or looked for an approaching train prior to his horses being upon the railroad track, except when he stopped and listened seventy-five feet from the crossing, and where he could not see down the railroad at all.

In *Wash., &c., R. Co.* v. *Lacy,* 94 Va. 466, 26 S. E. 834, the person injured stopped, looked and listened for the train several hundred feet away from the track, and after that could only have seen up the track of the railroad at a point within twenty-one feet of the crossing; yet for the lack of due care in continuing to look and listen for the approaching train when he might have looked and listened effectively, it was held that his failure to do this was contributory negligence.

In the case here the evidence leaves no room for doubt that the plaintiff had ample opportunity of seeing the approaching train in time to avoid the accident to him, and either failed to avail himself of the opportunity by the exercise of ordinary care, or, though seeing the train, attempted the hazardous undertaking of passing in front of it and simply made a miscalculation of his ability to do so. In either event he is clearly not entitled to recover in this action.

We are, therefore, of opinion that the judgment of the Circuit Court upon the demurrer to the evidence is erroneous, and it will be reversed and judgment entered here for the defendant company.

*Reversed.*