**SOUTHERN RAILWAY COMPANY,**
Appellant,

v.

**Mrs. Nora B. JOLLEY, Appellee.**

**No. 17447.**

United States Court of Appeals
Fifth Circuit.

May 13, 1959.

Rehearing Denied June 23, 1959.

Edgar A. Neely, Jr., Atlanta, Ga., Charles J. Bloch, Macon, Ga., Greene, Neely, Buckley & DeRieux, Atlanta, Ga., for appellant.

Newell Edenfield, J. C. Murphy, Ralph C. Jenkins, Atlanta, Ga., for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Ralph Jolley's widow brought suit for damages against the Southern Railway Company for the wrongful death of her husband that resulted from a railroad crossing collision between one of the railroad company's trains and a Jeep station wagon driven by Jolley. The case was tried without a jury. The district court awarded the widow damages in the amount of $24,000. We reverse and remand.

Ralph Jolley was a dairyman and farmer residing at Clarkston, Georgia. Sunday morning, December, 11, 1955, Jolley left home to attend to his dairy business. He told his wife that on his way home he would stop off at Duluth, Georgia, to pick

up a puppy as a gift for his granddaughter.

That evening, some time after 9 o'clock, Jolley was driving south on Highway 23 within the city limits of Duluth. The highway runs generally in a north-south direction at Duluth, and is about two hundred fifty feet east of the main line tracks of the railroad. Jolley turned off the highway and took the Old Peachtree Road. He was travelling at a speed of twenty-five miles an hour, more or less. He approached the crossing at the Old Peachtree Road. He failed to stop before he reached it.

At the same time, appellant's fast, streamlined train, the "Southerner", also was approaching the crossing. It was travelling north at about sixty miles an hour, a speed not unusual for the Southerner. Jolley's station wagon struck the side of the train's engine some twelve or fourteen feet from the front, just under the engineer's seat. Jolley was killed instantly.

The crossing at which the collision occurred was a dangerous one. It was marked only by the usual cross-arm sign on one side of the tracks. It had no stop signs. There was no watchman. There were no automatic signal warnings to notify a motorist of an approaching train. There was evidence, vigorously disputed by the railroad, tending to show that the view of a driver of a vehicle traveling west toward the crossing was obscured by shrubbery and grass on top of a ten foot bank through which the railroad tracks were cut. Thus, it was not possible to see a train approaching from the left until one was almost upon the tracks. Houses and trees also obstructed a driver's vision as he came toward the crossing. The tracks curve somewhat to the left so that the headlight beams of a train travelling north are not cast down the tracks and past the crossing until the train reaches the straightaway.

The engineer had sounded the warning whistle. As the train was about five hundred feet from the crossing the fireman saw Jolley turning off of Highway 23. He could not see the vehicle all the way up to the crossing but he could see the headlight beams at many points. At first, he did not notify the engineer of Jolley's presence at the crossing because he assumed Jolley would stop. Then, when the train was almost two hundred feet from the crossing, the fireman warned the engineer. The engineer sounded the cattle alarm on the whistle. Jolley did not stop. And it was too late to stop the train. Apparently, Jolley saw the train for the first time as the train came upon the crossing.

The district court held that the railroad was negligent: "primarily for failure * * * to install a signal device at this very dangerous crossing * * * in the absence [of which] a traveler along the road approaching the crossing could not be assured of safety without exercising *a degree of care not ordinarily required"*; a traveler would have to exercise "extraordinary care and diligence, [by] approach[ing] within a short distance of the railroad tracks, com[ing] to a complete stop and look[ing] in both directions before going across". That "is not the standard of care provided by Georgia laws". "In some states", the trial judge added, "the dangerous nature of the crossing causes courts to put all the exercise of care upon the traveler upon the highway and bars the plaintiff from recovery, but in other states, as in Georgia, such dangerous condition seems to put the greater burden upon the railroad". In awarding damages, however, the trial judge reduced the amount by twenty-five per cent, under the Georgia Comparative Negligence Statute (Ga.Code Ann. § 94–703), "on account of some negligence on the part of the deceased * * * who, however, is not found guilty of such negligence (in avoiding the consequences of defendant's negligence, failing to exercise due care for his own protection) as will bar the plaintiff from recovery". The trial judge stated: "It is true that [Jolley] would not have met with this tragedy had he driven his car to a point which would give him a clear view of the tracks to the south, and at that point come to

a complete stop. * * * [But] in the absence of proof to the contrary it must be assumed that the deceased did exercise ordinary care and diligence". "There is a presumption at law that the deceased was in the exercise of ordinary care and diligence."

We do not question the trial judge's statement of the heavy burden placed upon the railroad as a consequence of having a hazardous crossing. We question the trial judge's statement of the standard of care that Jolley was bound to follow.

Jolley was no stranger to Duluth. He had crossed the tracks at the Old Peachtree Road many times. He was familiar with the crossing. He knew all about the "Southerner". And it is not unreasonable to assume, as did the district court, that he was familiar with the schedule of the train. It was a bitter cold winter night, and undoubtedly, as the district court assumed, Jolley's car windows were up. The trial judge found that he could neither see nor hear the approaching train. But he could see the tracks and he knew where they were. He did not even slow down.

■ Georgia law—we follow it under Erie—creates a presumption of negligence against the railroad when injuries are caused by the operation of railway cars, but allows the presumption to be negated by evidence showing that the motorist could have avoided the consequences of the railroad's negligence through the exercise of ordinary care for his own safety. Central of Georgia Ry. Co. v. Barnett, 1926, 35 Ga.App. 528, 134 S.E. 126, 128, presents an excellent summary of the applicable principles:

"Under the law in force in this state, where damages are proven to have resulted to the plaintiff by the operation of the cars of a defendant railway company, a presumption of negligence arises against the defendant in respect of each of the negligent acts charged, and the plaintiff is entitled to recover the damage proven to have resulted to

him on such a prima facie case, unless the defendant shall carry the burden of showing that the damage was done by plaintiff's consent, or was caused by his own negligence, or that the defendant was not actually guilty of the negligence charged, or, if so, that the plaintiff could have avoided its consequences by the exercise of ordinary care after it had or should have became (sic) apparent. Even if it be made to appear that the negligence of the plaintiff contributed in some less degree to the injury, he is still entitled to recover, under the doctrine of comparative negligence, in an amount diminished in the proportion of the lesser default attributable to him. Questions of negligence, including such questions of comparative negligence, questions as to what negligence constitutes the proximate cause of the injury, and questions as to whether the plaintiff could have avoided the consequences of defendant's negligence. by the exercise of ordinary diligence, are such as lie peculiarly within the province of the jury to determine."

Section 68–1661 of the Georgia Code establishes the responsibility of a motorist approaching a railroad crossing. It provides in part:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely, when: * * *

"(c) An approaching train is *plainly visible* and is in hazardous proximity to such crossing."

The law was enacted in 1953. Since then there has been little judicial expression in Georgia casting light on the effect of the statute. However, Missouri-Kansas-Texas Railroad Co. v. McFerrin, 1956, 156 Tex. 69, 291 S.W.2d 931, 936, interpreting a substantially

similar Texas statute, Article 6701d, § 86(d) Vernon's Ann.Civ.St., held that there is no absolute duty on the motorist to stop. The duty to stop within the statutory distance comes into existence only when, among other things, the train is plainly visible. The test of the reasonably prudent man is applied to determine whether the train was, or should have been, plainly visible. Thus, "before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it." [1]

Georgia courts have held that the question whether a motorist whose view was obstructed exercised ordinary care as he approached a dangerous railroad crossing is a question of fact. Central of Georgia Ry. Co. v. Barnes, 1932, 46 Ga.App. 158, 167 S.E. 217; Seaboard Air Line Ry. Co. v. Sarman, 1928, 38 Ga.App. 637, 144 S.E. 810. See also Central of Georgia Ry. Co. v. Gibson, 1954, 90 Ga.App. 512, 83 S.E.2d 271. An important observation was made in the Sarman case:

> "[It] cannot be held *as a matter of law* that a person who was familiar with the crossing, but whose view of the approaching train was obstructed by a building near the track, by driving an automobile upon the railroad track at the crossing in front of an approaching train, without making some effort to detect the approach of the train, failed to exercise that degree of care legally required of him under the circumstances and was guilty of negligence which, unmixed with any negligence of the railroad company, proximately caused a collision between the train and the automobile." [38 Ga.App. 637, 144 S.E. 812.]

It has been held in Georgia that a motorist whose view is obstructed as he approaches a railroad grade crossing should use greater care and prudence than when his view is not obstructed. In Atlantic Coast Line R. Co. v. Associated Transports, 1956, 94 Ga.App. 563, 95 S.E.2d 755, 756, the court held that it was not error to refuse to charge specifically that there was a greater burden on the motorist than under ordinary circumstances, but only because the trial court's general charge sufficiently covered the point. The court, approving the substance of the contention, said:

> "It is our opinion that the entire charge of the court on this issue instructed the jury that an ordinarily prudent person should exercise greater care and prudence in looking and listening for approaching trains when his view is obstructed than would be necessary otherwise."

In Evans v. Georgia Northern Railroad Co., 1949, 78 Ga.App. 709, 52 S.E.2d 28, 29, as in the instant case, the driver of an automobile was familiar with the highway and the grade crossing where the accident occurred. Again as in the instant case, the accident took place on a dark night and the driver's vision was obscured (by fog and dimmed lights). Moreover, the railroad had at the crossing no electric bell or lights or other signals to warn motorists of an approaching train. The court held:

> "Under these circumstances she was under a duty, in the exercise of ordinary care, to operate the automobile in such a manner as to avoid passing over the crossing until after she was able to see that it was unobstructed, and in such a manner as to be able to stop in time to avoid hitting the train in the event the crossing was obstructed. * * * [T]he sole proximate cause of the collision was the failure of the operator of the automobile, with full knowledge of the conditions

938

then existing, to exercise ordinary care and control the automobile so as to avoid striking the train that was actually proceeding across the intersection."

See also Coleman v. Western & A. R. R., 48 Ga.App. 343, 172 S.E. 577; Louisville & N. R. Co. v. Patterson, 77 Ga.App. 406, 49 S.E.2d 218; Cosper v. A. C. L. R. Co., 85 Ga.App. 683, 69 S.E.2d 886.

In several of the pertinent cases one of the determinative facts is the motorist's familiarity with the crossing. Georgia Northern Railway Co. v. Stains, 1953, 88 Ga.App. 6, 75 S.E.2d 833; Evans v. Georgia Northern Railroad Co., 1949, 78 Ga.App. 709, 52 S.E.2d 28.

■ On the facts found by the trial judge and on the Georgia cases, as we read them, we are compelled to reverse and remand. The standard of care the lower court applied failed to recognize that a motorist's inability to see and inability to hear a train approaching a crossing he can see, and is familiar with, impose on the motorist the duty of exercising "a degree of care not ordinarily required". Ordinarily a motorist need not approach within a short distance of the railroad tracks, come to a complete stop or dead slow speed and look in both directions before going across. But in this case ordinary prudence required that much care for his own safety.[2]

■ The degree of care should be proportionate to the danger involved—for both parties. What was said in Carter v. Atlantic Coast Line R. Co., 1940, 194 S.C. 494, 10 S.E.2d 17, 20, applies equally well here:[3]

"Where the view or the hearing of a traveler approaching a railroad crossing is obstructed, he is under the duty of using greater care and prudence in looking and listening for approaching trains than where there is no obstruction. The degree of care which he must exercise in such cases, particularly where he is familiar with the crossing, must be in proportion to the increase of danger, and must be such care and prudence in looking and listening as an ordinarily prudent man would exercise under like circumstances of obstructions to view or hearing,—the question of the exercise of proper care and prudence in looking and listening depending upon the circumstances at the time and crossing."

In Atlantic Coast Line R. Co. v. Key, 5 Cir., 1952, 196 F.2d 64 recovery was allowed under somewhat similar facts. There, however, proper standards of care were recognized.[4]

We do not hold that Jolley was guilty of such negligence as to bar the plaintiff from recovery. That is for the trier of

2. The principle is well stated in 16 Am. Jur., Death, Section 302, page 207:
"Negligence on the part of the person injured and killed is ordinarily not presumed; he is presumed, on the contrary, to have exercised due care for his own safety at the time of his injury. This presumption is indulged, however, only to relieve a plaintiff from an inference of negligence and not to supply evidence of the negligence of the defendant. Moreover, the circumstances surrounding the mishap may be such as to rebut the presumption of due care and even to raise a presumption of contributory negligence on the part of the person killed."

3. See also Robinson v. Chesapeake & O. Ry. Co., 1922, 90 W.Va. 411, 110 S.E.

870; Atlantic Coast Line R. Co. v. Grubbs, 1912, 113 Va. 214, 74 S.E. 144; Southern Ry. Co. v. Jones, 1907, 106 Va. 412, 56 S.E. 155. It would appear that the presence of weeds, shrubbery, trees and buildings that impaired Jolley's vision "were patent and imperative warnings of danger which, in the exercise of ordinary care, [he] was bound to heed." See Mast v. Illinois Central R. Co., 8 Cir., 1949, 176 F.2d 157, 162.

4. The district court in the Key case charged the jury that "the standard of care required by the law of both the plaintiff and the defendant is the same" and that the "care of a prudent person may vary according to the circumstances dependent upon the degree of danger."

fact to decide. We do hold that the district court's failure to apply the proper standard of care makes reversal and remand necessary.

Reversed and remanded.

### On Petition for Rehearing.

PER CURIAM.

Western & Atlantic Railroad Co. v. Ferguson, 1901, 113 Ga. 708, 39 S.E. 306, 54 L.R.A. 802, is not inconsistent with our decision. In the Ferguson case the court found that the injured party had, in fact, complied with the duty to use ordinary care to avoid the consequences of the railroad's negligence, where that negligence should have been apparent to a reasonable man. We have applied the same standard of care here. It is ordered that the petition for rehearing filed in the above styled and numbered cause be denied.