**SOUTHERN RAILWAY COMPANY,**
Appellant,

v.

**John J. NEELY, Jr., a minor, by Mrs. Azalea V. Neely, as next friend,**
Appellee.

No. 18209.

United States Court of Appeals
Fifth Circuit.

Dec. 6, 1960.

Charles J. Bloch, Macon, Ga., A. Edward Smith, Albert W. Stubbs, Hatcher, Smith, Stubbs & Rothschild, Columbus, Ga., for appellant.

Stonewall H. Dyer, Atlanta, Ga., Henry N. Payton, Newnan, Ga., for appellee.

Before JONES, Circuit Judge, and HOOPER and JOHNSON, District Judges.

HOOPER, District Judge.

The plaintiff, a minor seventeen years of age, recovered a judgment against defendant in the court below in the sum of $37,500.00 representing damages found to be in the sum of $50,000.00 but reduced by twenty-five per cent on account of his comparative negligence. His impairment is permanent and serious and no complaint is made as to the amount. Defendant railroad company on appeal however, earnestly insists that the evidence shows that the plaintiff himself was guilty of such negligence in attempting to pass over the crossing in question as would bar his recovery as a matter of law.

In the interest of brevity, the evidence in the record will be discussed in connection with the question of law raised, to-wit:

(1) The alleged negligence of the railroad company in failing to maintain the crossing as required by Georgia statutes.

(2) The alleged negligence upon the part of the plaintiff in attempting to make the crossing, and

(3) The alleged negligence of defendant's engineer, with knowledge of the dangerous nature of the crossing and approaching the same at an allegedly negligent speed.

As the facts touching upon the condition of the crossing and the acts of the plaintiff in approaching the same are closely interwoven they will to a large extent be discussed together.

(1) At the time of the accident plaintiff was driving to school with his sister, age fifteen, proceeding along Cold Springs Road in an easterly direction approaching a railroad crossing approximately one-fourth to one-half mile south of the depot at Warm Springs, Georgia. Although it was not his customary way of going to school plaintiff was using the road in question because it was one mile closer than any other available route, but he was familiar with the crossing in question. As he crossed the tracks the front left end of his car was struck by a locomotive proceeding in a southerly direction.

As such locomotive proceeded southerly it traveled in a cut, the banks on either side being twenty to thirty feet high, and for the most part covered with foliage. Some one hundred to one hundred and twenty feet north of the crossing a locomotive going south would first be visible to a person at the crossing. A motorist proceeding easterly toward the tracks could have no view of a train approaching to his left and from the north until the eyes of the motorist had proceeded to a point into the cut, which means that the front bumper of the vehicle would at that time come within close proximity to the westerly side of a train proceeding south. Furthermore, as the front wheels of such a vehicle passed over the west rail they would be likely to drop into holes in the road and between the tracks at that point. As if the foregoing were not sufficient, the evidence shows that the front wheels of the vehicle after passing over the east tracks would come in a short distance to a sharp declivity in the road, which would cause the underside of the automobile, unless it was moving very slowly, to strike the road itself at the point of this declivity. The evidence shows that a witness in the case, Mr. Hill, a local rural mail carrier, a short time before this accident had in fact suffered that experience.

Such a motorist on approaching the crossing and looking to his right and to the south would have a similar view as looking to the north, in that the tracks also made a curve after going a short distance in that direction.

Georgia statutes provide that

"All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." Georgia Code § 94–503.

It is further provided that

"Such crossings shall include the width of land on both sides of the road allowed by charter or appropriated by the company therefor, and as many feet beyond, each way, as is necessary for a traveler to get on and off the crossing safely and conveniently." Georgia Code § 94–504.

■ The evidence in the record abundantly supports the finding of the trial judge to the effect that defendant railroad company violated the above quoted statutes and therefore was guilty of negligence.

(2) The next question is whether or not, as contended by defense counsel, the plaintiff was guilty of such negligence in attempting to make the railroad crossing in question as to bar him from a recovery as a matter of law. Defense counsel insists that this case is unique in that it appears the plaintiff stopped his vehicle on the railroad tracks while looking to see if a locomotive was approaching.

The Georgia courts have uniformly ruled that:

"The failure of a person approaching a railroad crossing, and unaware of the approach of a train, to stop, look or listen is not a lack of ordinary care preventing recovery, as a matter of law, in a suit for ordinary negligence." Atlanta, Birmingham and Coast Railroad Company v. Thomas, 64 Ga.App., 253, at page 254(4), 12 S.E.2d 494, at page 497.

As to whether plaintiff's failure to stop, look, or listen is a lack of ordinary care preventing recovery is a question for the jury to determine in each case.

A motorist whose view is obstructed, however, should use greater care and prudence than when his view is not obstructed. There may be circumstances under which ordinary prudence might require that he stop, look and listen. The question whether a motorist whose view was obstructed exercised ordinary care as he approached a dangerous railroad crossing is under Georgia law a question of fact. See Southern Railway Company v. Jolley, 267 F.2d 934, 937, 938, and cases cited.

Defense counsel, citing cases from other jurisdictions, insists that under these circumstances there was a duty upon the part of the plaintiff to stop his car, walk to the railroad tracks, look in each direction, then drive his car over the crossing. As to that contention, however, Mr. Justice Cardozo in the case of Pokora v. Wabash Railway Co., 292 U.S. 98, at page 104, 54 S.Ct. 580, at page 582, 78 L.Ed. 1149, made the following observation:

"To get out of a vehicle and reconnoitre is an uncommon precaution, as everyday experience informs us. Besides being uncommon, it is very likely to be futile, and sometimes even dangerous. If the driver leaves his vehicle when he nears a cut or curve, he will learn nothing by getting out about the perils that lurk beyond. By the time he regains his seat and sets his car in motion, the hidden train may be upon him."

That case has been cited with approval by the Georgia Court of Appeals. Collier et al. v. Pollard, 60 Ga.App. 105, at page 109, 2 S.E.2d 821. It is particularly appropriate under the facts of the instant case.

There is a Georgia statute requiring a motorist to come to a stop if doing so will be of any avail, and providing such stop shall be within fifty feet but not less than fifteen feet from the nearest rail, and that he shall not then proceed until he can do so safely, when an approaching train is plainly visible and is in hazardous proximity to such crossing. Georgia Code § 68–1661. That statute, however, as construed by courts of other states and as construed by us, does not impose an absolute duty on the motorist to stop, such duty coming into existence only when, among other things, a train is plainly visible. See Southern Railway Company v. Jolley, 267 F.2d 934, at pages 936, 937, and cases therein cited.

The trial judge found that the bell of the locomotive was rung as required by law but that neither the plaintiff nor his sister heard the same. It is clear from the evidence, however, that the plaintiff was making an earnest effort to ascertain whether or not a train was approaching, as he stopped his car, looked to his right in a southerly direction, and then to his left in a northerly direction. Looking to the north he saw the locomotive rounding the curve some one hundred or one hundred and twenty feet away and approaching, as the trial judge found, at a speed between twenty-five and thirty-five miles per hour, this not affording to plaintiff sufficient time to do what he had intended to do under such circumstances, to-wit, put his car in reverse and back off of the west rail.

We have carefully studied the record in the case to determine whether plaintiff in permitting the front of his automobile to get in a position of danger was guilty of such negligence as to bar his recovery. In addition to the facts

above stated there is in evidence a photograph taken by a camera located nine feet west of the western rail and pointed in a northerly direction along the tracks showing considerable vegetation to obscure the view and the sharp curve above referred to.[1] Assuming plaintiff's eyes to be placed in the same position as the camera, consideration must be given as to the location of the front bumper of his vehicle at the time. The distance from his eyes to his front bumper must be added to the distance by which the side of the train would extend westerly from the track in order to determine whether the plaintiff was in a position of danger. These exact measurements do not appear in the record. The burden of proving contributory negligence is upon the defendant.

The plaintiff testified as follows:

"Q. Did you always stop it on the track in crossing? A. Usually it was either on or very close to the track; otherwise I couldn't see up the track to my left at all.

"Q. Well, now, did you stop on the track on this occasion? A. Yes, sir. My front wheel was against the rail."

The trial judge made the following finding of fact:

" * * * it was necessary for the plaintiff to reach the mouth of the cut at or near the line of tracks of the defendant before he could see the approach of the train from the North and he drove his vehicle to a point where he could see along the tracks of the defendant, his automobile moving slowly to a stop, at that point the front of his vehicle extending across the west rail of the defendant's tracks as he reached a point where, from the driver's seat, he could see along the line of said tracks."

It therefore appears that the plaintiff, being aware of the dangerous nature of the crossing, was attempting to stop his car at the first point which would give him a view of the railroad tracks in each direction, that he did actually stop, look, and listen, but that inadvertently he permitted the front end of his car to get in a position of danger. It does not appear from the record, however, that he could have stopped his car any sooner and thereby have placed himself in a position where he could get a view of an approaching locomotive.

The statute here applicable is Georgia Code § 94–703, which provides:

"No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him."

It cannot be said that plaintiff's injuries were done by his consent or caused by his own negligence, for that implies that his own negligence was the sole proximate cause of his injuries. The latter portion of the aforesaid section therefore controls for, as found by the trial judge, the plaintiff and the defendant were both at fault, and plaintiff's recovery must be diminished in proportion to plaintiff's fault.[2]

---

1. This photograph graphically shows another respect in which the railroad was negligent in failing to make the crossing less dangerous for vehicles going in an easterly direction.

2. There is another Georgia code section which provides circumstances under which a plaintiff's claim is barred, reading as follows:

"If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Georgia Code § 105–603.

**638**

(3) The trial judge found the railroad guilty of negligence in approaching the crossing in question at a speed between twenty-five and thirty-five miles per hour. Defense counsel urges that the evidence does not support this finding, but at the same time calls attention to the fact that the locomotive at this point going southerly would have to pick up speed in order to negotiate a rise in the tracks ahead. While the Georgia law imposes no absolute duty upon a railroad engineer to have his engine under such control when approaching a crossing that he can bring it to a stop in order to avoid injuries to persons at the crossing, it only requires that he

"shall otherwise exercise due care in approaching said crossing, in order to avoid doing injury to any person or property which may be on such crossing,"

and it is for the finder of fact to decide whether the speed maintained at the time and place in question constitutes negligence. See Georgia Railroad and Banking Co. et al. v. Cook, 94 Ga.App. 650(3), 95 S.E.2d 703, 705.

There was therefore a duty resting upon both the plaintiff and the defendant's engineer to exercise due care under the circumstances. The trial judge was justified under the evidence in finding seventy-five per cent negligence attributable to the railroad and twenty-five per cent to the plaintiff. We must observe, however, that while the evidence shows that the railroad was negligent both in failing to maintain the crossing in a proper manner and in approaching the crossing at the rate of speed aforesaid, it is also apparent from the evidence that the greater part of defendant's negligence was in permitting the crossing to be one of such extreme danger.

(4) Defense counsel insists that the trial judge should have reduced plaintiff's damages by one-third, being the proportion which plaintiff's twenty-five per cent negligence bore to defendant's seventy-five per cent negligence. This contention, however, is contrary to the interpretation placed by the Georgia courts on Georgia Code § 94–703, providing that plaintiff's "damages shall be diminished by the jury in proportion to the amount of fault attributable to him." See Georgia Railway & Power Company v. Belote, 20 Ga.App. 454, 93 S.E. 62. The writer, however, speaking only for himself, wishes to observe that the construction placed upon the above code section by the experienced trial judge is the one which for some years has been almost universally adopted by the bench and bar of Georgia.

The judgment of the trial court is amply supported by the evidence, and it is affirmed.

The Georgia courts therefore have ruled that in Georgia

"Contributory negligence is of two separable, distinct defenses * * *: First, the plaintiff must at all times use ordinary care for his own safety, that is, he must not by his own negligence (or consent) proximately cause his own injuries; and second, the plaintiff must use ordinary care to avoid the consequences of the defendant's negligence when it is apparent or when in the exercise of ordinary care it should become apparent. Either or both of these defenses go in bar of the right of recovery * * * Comparative negligence is applicable only when the jury has not found either the negligence of the plaintiff or that of the defendant to be the sole proximate cause." Whatley v. Henry, 65 Ga.App. 668, at page 674, 16 S.E.2d 214, at page 220.

However, plaintiff is also barred under the doctrine of comparative negligence where plaintiff's negligence is equal to or exceeds that of the defendant.