COLUMBUS RAILROAD COMPANY v. PEDDY.

SIMMONS, C. J. 1. The preamble of the ordinance and the ordinance itself clearly show that it was adopted for the purpose of regulating the speed of cars propelled by steam, and does not apply to cars propelled by electricity. It was therefore error to admit it in evidence as applying to the speed of cars of the latter class.

2. Where a railroad company is sued for personal injuries, declarations made by an employee after the time of the injury, and not as a part of the res gestæ, are inadmissible for or against the company ; but such declarations may be proved by another witness to contradict or impeach the testimony of the employee on the trial of the case. The impeaching evidence can not be used to establish the statements in the declarations of the employee, but is admissible for the sole purpose of impeachment by proof of contradictory statements.

3. This being a very doubtful case for recovery on the part of the plaintiff, it was error to refuse the following request to charge, duly presented in writ-

ing: "The precise thing which every person is bound to do before stepping upon or going on a railroad track is that which every prudent man would do under like circumstances. If prudent men would look and listen, so must every one else, or take the consequences, so far as the consequences might be avoided by that means." *Metropolitan St. R. Co.* v. *Johnson*, 90 *Ga.* 501 (5).

4. A charge that "Although the railroad company may have been negligent in running its cars at a greater rate of speed than the law permits it to do, yet if the plaintiff could have avoided the accident by the use of ordinary care and prudence upon her part, then she would not be entitled to recover; but if the defendant was negligent and the plaintiff was negligent, then the doctrine of contributory negligence would come in," is erroneous in that it states in immediate connection with each other, without proper explanation, two distinct rules of law, thus qualifying the former by the latter, which is not the purpose of the statute. *Americus R. Co.* v. *Luckie*, 87 *Ga.* 6.

5. It was error to charge the jury that the failure of the plaintiff to stop, look, and listen before driving upon the track of the defendant "would not defeat her right to recover entirely." Whether, under the evidence, a failure to stop, look, and listen would have been such negligence as to entirely bar a recovery was a question of fact for the determination of the jury.

6. It is error to charge, "The law requires the motorman to keep the cars under perfect control; in other words, he must look ahead for the purpose of discovering whether or not, in a populous city, there are vehicles or pedestrians upon the track. If he fails to do it, then, gentlemen, he has failed to do his duty." These are questions of diligence and negligence, which are for determination by the jury and not by the court. *Central of Ga. Ry. Co.* v. *McKenney*, 116 *Ga.* 13; Hopkins, Pers. Inj. § 25 et seq.

7. The motion for new trial complains of the refusal of other requests to charge. Such of these requests as were legal and pertinent were substantially covered by the general charge. There are also charges complained of with which we do not deal, though some of them contained minor errors. Such errors the trial judge will doubtless himself correct on the next trial.

*Judgment reversed. All the Justices concur.*

Argued June 15,—Decided July 13, 1904.

Action for damages.     Before Judge Butt.     Muscogee superior court.     August 1, 1903.

The action was for personal injuries from the collision of an electric street-car with a buggy in which the plaintiff was riding. The collision occurred in Broad street, in the City of Columbus. Double tracks of the street-railroad run north and south along the east side of the street. The plaintiff was on that side of the street, in a buggy facing south, which was standing near the sidewalk, when a car passed, going north. According to her testimony she thereupon proceeded to drive diagonally, in a southwesterly direction, "looking to see if there was any car in sight," her intention

being to cross to a store on the west side of the street, somewhat farther south; she "saw that the track was clear, and proceeded to drive across." The horse was walking slowly. She drove across the first track, and across the space between it and the west track (eight and a half feet wide), and then on the west track, and, while on the west track, heard a car. She looked northward and saw the car approaching rapidly on that track; it seemed to be very close, — about twenty feet from her, not more than thirty feet; and the motorman was "looking over his left shoulder as though he was looking towards the car that had passed." She screamed immediately, and as she did so he turned and began applying his brakes. Her first thought was to reach for her whip; she thought that if she could strike the horse he would jerk her safely over the track; and while she was standing on her feet reaching for the whip, the car struck the back wheel of the buggy, causing her to fall out. She was seriously injured by the fall. She did not hear a gong before she saw the motorman; she did not know what called her attention to the approach of the car. Before that, while driving across, she was looking at her horse. She did not look up the street (north) before she started to drive from where the buggy had been standing; she drove off just as the uptown car passed her, — drove in behind it, and, after it had passed, looked to see if she could see any other car, but did not see one. She looked before she crossed the first track, and did not look again until she was on the track on which the collision occurred. It occurred at about the middle of the block. The transfer station is a block above that. The blocks are six hundred feet long. She testified: "I suppose, if I had been looking up that way, I could have seen from where I was, up to the transfer station. . . . I looked to see if I had time to get out of the way before any cars came. I didn't see any car, I know, as far as Eleventh street (the next cross street north). I didn't notice any car coming; I don't know how it could have got there so quick. . . If I had looked up the track before driving on the west track, I suppose the car would have been between the transfer station and Eleventh street, but I don't know. . . I am thoroughly familiar with Broad street. I don't think it was the noise of the car that attracted me. I chanced to look that way." Broad street is the principal business street of the city, and vehi-

cles and pedestrians are constantly passing at all points. She did not notice any vehicle that would prevent her from seeing. According to the testimony of other witnesses, the car that struck the buggy had passed the car first mentioned near the south side of the next cross street. Its speed was variously estimated at from five or six to fifteen or twenty miles an hour. It was testified that the car stopped in five or six steps after it struck the buggy; also that it stopped in five or six feet. The motorman and other witnesses introduced by the defendant testified that the gong of the car was rung as it was passing the other car, and afterwards, before the collision; that he was looking straight ahead and that he made every effort possible to stop the car in time to avoid striking the buggy.

The court admitted in evidence, over the objection of the defendant, an ordinance of the City of Columbus, providing that the Columbus Railroad Company be allowed to propel its cars by steam engines, and "that said cars shall not be propelled through the streets of said city at a greater rate of speed than six miles an hour." The objection made was that the ordinance refers only to steam power, and not to cars propelled by electricity.

Wood, the motorman of the car that struck the buggy, was asked, on cross-examination by counsel for the plaintiff, "Didn't you tell Farley that you had an accident some time ago, and he asked you what it was, and didn't you tell him you run over Mrs. Peddy down town here and you bursted her bladder and disfigured one of her titties, and that you hit her a little harder than you aimed to?" The witness answered, "No." The question was allowed over the objection of counsel for the defendant, counsel for the plaintiff stating that it was asked for the purpose of contradicting the witness. Afterwards Farley was introduced as a witness for the plaintiff, and, over objection by counsel for the defendant, was allowed to testify that, in a conversation in regard to the injury to the plaintiff, Wood made the statement referred to in the foregoing question. The objection was that this statement was not a part of the res gestæ, and was not made by Wood while acting in the scope of his business as an employee of the defendant, and was introduced for the purpose of prejudicing the defendant before the jury. The court stated that the testimony was allowed only for the purpose of contradicting

Wood.    After argument of the case was begun, this testimony was ruled out.

The verdict was for the plaintiff.    The defendant excepted to the overruling of its motion for a nonsuit, and of its motion for a new trial.    The motion for a new trial alleged that the verdict was contrary to law and the evidence, and that the court erred in admitting the testimony which had been objected to, and in giving certain instructions to the jury and refusing to give others, the material parts of which are set out in the decision.

*L. F. Garrard, Frank U. Garrard,* and *W. Cecil Neill,* for plaintiff in error, cited Civil Code, §§ 2321, 2322, 3830, 5347; *Ga. R.* 66/196; 67/739; 82/801; 86/43; 87/6; 90/501; 94/142; 95/291; 97/298, 499, 648; 101/217, 400; 102/285, 526; 103/655; 111/838; 113/597; 119/98, 246; 85/487; 107/370; 39 N. E. 709; 36 Atl. 119; 17 Atl. 895; 48 Atl. 470; 63 N. W. 401; 60 N. W. 795; 67 N. W. 815; 41 N. E. 586; 95 U. S. 697; 150 U. S. 245; 174 U. S. 382–4.

*T. T. Miller* and *E. J. Wynn,* contra, cited *Ga. R.* 18/680; 26/250; 96/652–4; 97/664 (5); 101/410; 103/660; 106/870; 113/708; 114/312–16; 116/644; 19 S. W. 69; 88 Va. 556; 63 Wis. 626; 84 Ala. 141; 18 Wash. 351, s. c. 45 L. R. A. 169; 18 L. R. A. 63; 54 L. R. A. 184; 2 Am. R. 517; 2 Am. Neg. R. 193–5; 9 Am. Neg. R. 557.