26635, 26667.   CARTER *v.* POWELL, receiver, *et al.*, and *vice versa.*

362

DECIDED FEBRUARY 22, 1938.

J. A. Hixon, Hollis Fort, Hollis Fort Jr., for plaintiff.

Dykes & Dykes, for defendant.

GUERRY, J. Mrs. J. L. Carter brought the present action for damages against L. R. Powell, receiver of the Seaboard Air-Line Railway, and J. L. Ross, its employee and engineer, alleging that she was injured by the negligent operation of one of its trains, being operated at such time by said J. L. Ross. The petition alleged that she was driving her automobile south on State route 3, a paved highway, just outside of Americus, Georgia, about 2 o'clock in the afternoon of November 17, 1935; that the railroad of the defendant running from east to west crosses said public road on a steep grade as such highway approaches a small creek to the south of the railroad right of way; that embankments eight to fifteen feet high existed on either side of the highway as it approached the railroad crossing and "it was impossible for one to see a train coming from the east going west . . until arrival immediately at the railroad's right of way and crossing, or to hear the sound thereof by reason of the high hill, the pear and pecan orchards, and woodland on the north, the sound of a train approaching from the east would naturally drift towards the ravine of the branch, and especially would the sound be driven by the embankment immediately on the north of said railroad from said point from towards said highway crossing, and the vision of one was completely obscured from the point on the brow of the hill between said public highway leading down to said crossing going south, and the railroad approaching from the east;" that the said highway at this point was sixteen feet wide with shoulders on either side two or three feet wide, and just outside the shoulders and between them and the embankment was a water drain, one or two feet in depth, running from the crown of the hill to the railroad crossing, and at the railroad right of way a ditch was dug east and west and the water was turned at this point to prevent its running over the tracks; that an embankment had been placed

along this ditch by the railroad to deflect this water to the west, and that except for this embankment at or near the shoulders of the public highway a car could be safely driven to the west between the railroad crossties and the embankment to the north; that the highway going south to this crossing commenced a gradual curve some two hundred yards north of the crossing, and curved gradually to the crossing, and one traveling in an automobile could not see the crossing until they got within 100 to 125 yards thereof; that there was erected on the north side of the railroad crossing on said highway the stop sign required by law and in the manner required by law, but because of weather and age, the printing thereon was practically obliterated and one not accustomed to them could not read the sign in passing unless they stopped; that the usual cross-arm sign was erected, but because of four or five advertising signs along the highway it could not be seen by one approaching from the north; that the incline of the highway was steeper just before it reached the railroad crossing; "that the high embankment on the left-hand side of said highway approaching said railroad crossing from the north, and the high embankment on the north side of the said railroad's right of way at this point intersecting just north of the crossing, having been previously graded down immediately in the corner thus made, to some four feet high on the highway and railroad frontage, enabled one approaching said crossing from the north to see a train approaching said crossing from the east some 80 feet from the crossing, and enabled an operator of a train to see an automobile approaching said crossing from the north some 100 feet north thereof. And before these points were reached the vision was entirely obscured by the embankment on the north side of the railroad to persons operating a train, and by the embankment on the highway to persons riding thereon. And it is shown and alleged that on said occasion the engineer did see petitioner in her automobile approaching said crossing from the north when she got within some 100 feet thereof, and the petitioner saw the train approaching said crossing from the east when it got within some 80 or 100 feet thereof;" that said train consisted, as it afterwards developed, of an engine and one passenger coach, and was "running at a terrific, fast rate of speed, some fifty miles per hour, or more, and maintaining this speed at this distance from the crossing. Petitioner

realized her immediate danger, threw on her brakes, realizing said train would beat her to the crossing if she attempted to cross at the speed it was going, she put on her brakes, and attempted to turn her car to the right, and was leaving the paved roadway, and had got her engine across said embankment or support to said ditch running parallel with the road; her front wheels got over the same while said train was passing, but in some way to petitioner unknown, the rear end of said train hit the rear end of her car with a terrific impact; petitioner is advised and believes that her car skidded against said rapidly moving train; her car was jerked by said impact, the rear end of it was smashed, bent, and damaged beyond repair; the doors were knocked open, and petitioner was thrown therefrom with great violence to the ground, and her aunt, Miss Alice Carter, was thrown from said car on the right against the embankment with powerful force and impact, to such an extent that she died from the injuries thus received within a few hours thereafter;" "that from the time said engineer first observed petitioner, and her said car on said occasion, as alleged, he should have, and could have, stopped said train, and saved petitioner the terrible injuries and damages she thus received, and her aunt's life by so doing, but instead thereof he accelerated the speed of said train as much as he could, and dashed by petitioner in said perilous position, striking her said car, and smashing the body, etc."

The acts of negligence alleged were as follows: "(a) Said engineer failed to blow the whistle of said engine as required by law, and in the manner required by law, giving warning of said train's approach to said crossing four hundred yards before reaching the same. (b) That said engineer failed to otherwise exercise due care in approaching said crossing in order to avoid doing injury to any person or property upon said crossing, and in order to avoid doing injury to petitioner at said crossing, as alleged. (c) It is further shown and alleged that said defendants were negligent in failing to have said engine equipped with a whistle of the size and dimension, and making the sound, and giving the force to the blast as required by statute, but the same was a smaller whistle giving out a less sound and blast than required by statute. (d) That said defendants were negligent and grossly negligent, and entirely failed to exercise due care in approaching said crossing, and especially after the perilous position of this petitioner was

observed by the engineer then and there operating said train and engine pulling the same, and in failing to apply the brakes and stop said train, and avoid doing injury and damage to petitioner. (e) That said defendants were negligent further in failing to keep said sign boards, or stop signs as required by statute, printed in letters large enough to be read by persons approaching said crossing, and allowing the same to become old and so obliterated that it could not be seen or read by one approaching said crossing, as alleged. (f) That said defendants were further negligent in the construction and grading of its said roadway at said crossing, and in the manner in which said ditches were dug east and west on the line of its right of way immediately at the crossing so as to divert the water coming down the roadway from off the tracks, and leaving shoulders immediately to protect the embankment just immediately where the water turned, the shoulders extending to the right of way practically, and nearly to the end of the crossties, as alleged. (g) That said crossing was designated as required by law as a dangerous crossing, and the same was a dangerous crossing, and from all of the conditions herein set out, it was negligence in said defendants to operate said train at the rate of speed they did operate the same, and in not approaching said crossing with proper care and caution relative to the rate of speed thereof, as alleged. (h) That said defendants were negligent in having the crossarms, or cross signs so erected as to be completely obscured by advertising signs to one approaching the crossing from the north, as alleged. (i) That said J. L. Ross, the employee of said defendants then in charge and operating said train at said time, actually participated in many of the negligences aforesaid, to wit: in failing to blow the whistle of said engine as required by law; in failing to apply the brakes and stop said train when he first observed the perilous position of petitioner, and by reason of his participation in these wrongs and torts he became a joint tort-feasor with said defendants." It is further alleged that at the time "petitioner was taking every precaution for her safety, and driving at a moderate and ordinary rate of speed, some thirty miles per hour, being a stranger to said highway, and unacquainted with it, never having driven over it but a few times, and not at all since the change of the same between Brooklyn Heights and the crown of the hill as herein alleged, and in driving down said steep

incline towards said railroad crossing she gradually checked the speed of her car; that in going down said descent towards said railroad she heard no signal of the approach of any train on the left, nor the approach of any train to said crossing; she was watching ahead in the roadway, and when she turned the curve in the same sufficiently to enable her to see down said roadway across said ravine she observed the fill, and the white posts at intervals of eight feet protected by wire netting, and was taking every precaution, looking down the roadway, and across the crossing, though she did not know at the time that there was a railroad crossing; petitioner heard no signal of the approach of said train, and she alleges that no signal of the approach of said train was given on said occasion."

The defendants filed general and special demurrers, all of which were overruled. The trial resulted in a verdict for the plaintiff. Defendant duly filed a motion for new trial which was amended and on the hearing the trial judge passed an order in part as follows: "Said motion is hereby sustained and a new trial granted upon the sole ground that as a matter of law, under the evidence, the plaintiff is not entitled to recover." To this judgment of the court granting a new trial "upon said ground 'that as a matter of law, under the evidence, the plaintiff is not entitled to recover,' the plaintiff in the court below, now the plaintiff in error, did then and there except and does now except and assign as error said ruling, order, and judgment of the court, and for cause of error says, that the court erred in sustaining said motion and in granting a new trial, because the evidence does support the verdict and under the law the plaintiff was and is entitled to recover." The defendants by way of cross-bill of exceptions except to the overruling of their demurrers.

■ The court did not err in overruling the general demurrer. It is well settled that "questions as to diligence and negligence, including contributory negligence, and what negligence constitutes the proximate cause of the injury complained of, are questions peculiarly for the jury, such as this court will decline to solve on demurrer except where such questions appear palpably clear, plain, and indisputable." *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.* 759 (154 S. E. 718). The present case does not fall within the last-mentioned category. Assuming that the allegations of the petition are

true, it is not "palpably clear, plain, and indisputable" that the defendant was guilty of no negligence or that its negligence was not the proximate cause of the injury, or that the plaintiff was negligent, and if so, that her negligence was the proximate cause of the injury. On the contrary, it remains peculiarly a question for the jury to determine, among other things, whether or not the defendant rang the bell or blew the whistle in approaching the crossing; whether or not the defendant approached the crossing at the rate of speed alleged in the petition, and if so, whether this amounted to negligence and was the proximate cause of the injury; and whether or not the defendant was negligent, after seeing plaintiff approaching the crossing, in failing to stop its train to prevent injury to her. It is also within their province to determine whether or not under the circumstances the plaintiff herself was guilty of negligence in approaching said crossing, taking into consideration all the facts and circumstances. It is insisted that this court should hold that the plaintiff was guilty of such negligence as bars any recovery by her in that, "she failed to come to a full stop at said crossing marked dangerous, as required by law." The Code, § 95-1801, provides that wherever a public highway shall cross the main line of any railroad at grade, not in an incorporated town or city, that it shall be the duty of the county authorities to designate such grade crossing as "safe" or "unsafe." § 95-1802 provides for notice of such designation to the railroad company. § 95-1803 provides that certain signs shall be erected at "unsafe" crossings. § 95-1804 provides as follows: "Every person operating a motor vehicle, on approaching a crossing so designated as an unsafe crossing, shall bring his vehicle to a full stop at a distance of not more than 50 feet from the nearest rail of the track, before he shall cross thereover or attempt to do so." This is the only statute in this State requiring the operator of an automobile approaching a railroad crossing to bring his automobile to a full stop before crossing the same. In § 95-1808 it is provided: "A failure to observe the provisions of this chapter shall not be considered as an act of negligence per se in any action against the railroad company for injury to person or property, but the facts relating to any failure to observe the requirements thereof may be considered along with the other facts in the case in determining the question of negligence, if any: provided, that in the trial of

any civil case involving damages to person or property at or near any such crossing it shall be unlawful for this law to be read to or commented on before any jury empanelled to try such civil case, nor shall the judge upon the trial of such civil case charge the provisions of this chapter, the true intent of this law being not to change the existing law in reference to civil cases for the recovery of damages on account of personal injuries or property damage at or near any railroad crossing: . ." It is therefore plain that § 95-1804, was not intended to change the diligence due by the operator of an automobile approaching a crossing as involved in a civil action for damages to person or property against a railroad company, at or near a railroad crossing, alleged to have been brought about by the negligent operation of one of its trains. It has been often held that this court can not hold, as a matter of law, that a person operating an automobile approaching a railroad crossing is guilty of such negligence in failing to stop before crossing the same, as will bar a recovery by such person of damages, alleged to have been brought about by the negligence of the railroad in the operation of one of its trains.

In *Southern Ry. Co.* v. *Slaton,* supra, Judge Jenkins most ably wrote on this subject as follows: "There are some cases where it has thus been held that a petition was subject to demurrer because it showed on its face a plain, palpable, and indisputable example of an injury having been brought about by the lack of ordinary care on the part of the plaintiff, such as *Georgia Pacific Ry. Co.* v. *Richardson,* 80 *Ga.* 727 (7 S. E. 119), where the plaintiff, a trespasser, was walking a railway trestle; but the principle just stated and illustrated should not, under the great weight of authority in this State, be applied to the duty owing by a person, not a trespasser, lawfully undertaking to pass over a public or private railroad crossing. It is true that the Supreme Court has held that the court might properly charge the jury that 'the precise thing which every person is bound to do before stepping upon a railroad track, is that which every prudent man would do under like circumstances,' and that '*if* prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means.' *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500 (5) (16 S. E. 49); *Columbus R. Co.* v. *Peddy,* 120 *Ga.* 589 (3) (48 S. E. 149); *Col-*

*lum* v. *Georgia Ry. & El. Co.,* 140 *Ga.* 573 (3) (79 S. E. 475). But this is an entirely different thing from the court undertaking to decide for itself, and as a matter of law, what such a person lawfully entering upon a public or private railroad crossing must or must not do in order to free himself of a guilt of a lack of ordinary care constituting the proximate cause of his injury. On the contrary, it has been many times ruled that such a question is one to be determined by the jury as a question of fact, rather than by the court as a matter of law. This long line of decisions, contrary to the rule in some jurisdictions, is to the effect that it can not be said, *as a matter of law,* that the failure on the part of a person approaching and entering upon a railroad crossing, and unaware of the approach of a train, to stop, look, or listen, renders such person guilty of a lack of ordinary care such as would prevent recovery except in cases of wilful and wanton misconduct on the part of the defendant company." The above ruling is equally applicable to a person approaching and entering upon a railroad crossing in an automobile. See *Tennessee, Alabama & Georgia R. Co.* v. *Neely,* 27 *Ga. App.* 491 (2) (108 S. E. 629). If the defendant was not negligent in one or more of the ways set forth in the petition, of course there can be no recovery. However, if the defendant was guilty of one or more of the acts of negligence as alleged, and it does not appear that some other cause, such as the negligence, if any there was, of the plaintiff, so preponderated in bringing about the result, that the human probabilities are that the injury would just as likely have ensued, if the negligent acts of the defendant had not occurred, the plaintiff should recover. If it does appear that plaintiff was negligent, and that although the defendant might also have been guilty of negligence, that plaintiff's negligence so preponderated in bringing about the result that the human probabilities are that the injury would just as likely have ensued if the negligent acts of the defendant had not occurred, the plaintiff should not recover. However, if both were negligent and their negligence stands so related that neither would have produced the harmful result, and the negligence of one has not so intervened as to make it the preponderating cause, and the negligence of both consist of such acts as, according to the general course of human probabilities, produce some such injurious effect as that which did in fact ensue, in such

case, both are guilty of concurring negligence, and the recovery of the plaintiff should be reduced in the proportion that her negligence contributed to the injury, except of course, if that proportion be one-half or more, there should be no recovery. See *Atlantic Coast Line R. Co.* v. *Daniels,* 8 *Ga. App.* 775 (70 S. E. 203).

Able counsel for the defendant points out that the plaintiff, immediately before she reached the crossing, jerked her car abruptly to the right, causing her car to be thrown into the rear of the defendant's train at a point not on the crossing, and that if the plaintiff had not so acted the accident would not have happened. The answer to this is that the inquiry is not whether if the plaintiff had not acted in the manner that she did the injury complained of would not have occurred, but is whether her acts were negligent and if so, whether they were or were not a contributing cause, or whether they were the sole proximate cause. If her acts in the transaction, including her abrupt departure from the highway, were not negligent, i. e. if she acted just as an ordinary prudent person would have acted under similar circumstances, her conduct is to be considered only as a part of the normal course of human affairs. It matters not so much where the accident happened, as it does *how* and *why* the accident occurred *at the place it did occur.* The plaintiff, immediately before the accident, was approaching the crossing of the defendant on a public highway, and was therefore of the class of persons to whom the defendant owed the duty of exercising care in the operation of its trains over such crossing. The cases of *Brinson* v. *Davis,* 32 *Ga. App.* 37 (125 S. E. 736); *Tidwell* v. *Atlanta, Birmingham & Coast Railroad,* 42 *Ga. App.* 744 (157 S. E. 535); *Eberhart* v. *Seaboard Air-Line Ry. Co.,* 34 *Ga. App.* 49 (129 S. E. 2), are clearly distinguishable upon their facts from the present case. In *Jones* v. *Seaboard Air-Line Ry. Co.,* 34 *Ga. App.* 772 (131 S. E. 128), the court did not have under consideration the sufficiency of the petition as against a general demurrer but only the question whether a nonsuit was properly granted. In the case of *Western & Atlantic Railroad* v. *Crawford,* 47 *Ga. App.* 591 (170 S. E. 824), the court had before it only the question whether a charge of negligence against the defendant railroad company that it failed to keep a proper lookout in approaching the crossing could have been the proximate cause of the injury to plaintiff (who was approaching the crossing in an auto-

mobile), where it was further alleged that because of the physical surroundings of the crossing a person approaching the crossing on the highway could not see the train until he was within five or six feet of the crossing. The court held that construing the petition most strongly against the plaintiff, it appeared likewise that the servants of the defendant could not see the plaintiff approaching the crossing until he was within five or six feet of the crossing, and that therefore the failure to keep a proper lookout could not have been the proximate cause of the injury. That case is not authority for the position that construing the present petition as a whole it is subject to general demurrer.

As already set forth, the petition alleged that just outside of the shoulder of the highway on the right going south, and between it and the embankment, there was a water drain one or two feet in depth running from the crown of the hill to the railroad crossing and at the railroad right of way a ditch had been dug east and west, at which point the water was turned to prevent its running over the tracks at the crossing; that an embankment had been placed along this ditch by the railroad to deflect this water to the west, and that except for this embankment at or near the shoulders of the public highway a car could be safely driven to the west between the railroad crossties and the embankment to the north. In paragraph 7 (f) of the original petition, above quoted, the maintainance of this embankment on the right of way of the defendant was charged as negligence. By way of amendment the above allegations were enlarged upon and it was alleged that it was because of the existence of this embankment and drain ditch constructed on the right of way by the defendant, that the car of the plaintiff was caused to be thrown into the rear of the defendant's train, after she had jerked the same off the road and onto the right of way in an effort to avoid colliding with the train. It is further alleged that "by reason of such negligent excavation next to the crossties, and the negligent elevation constituting the shoulder to the main water drain so negligently constructed and left open, constituted negligence:" A special demurrer was directed to the above allegations of negligence. This demurrer pointed out that the acts charged therein could not in the present case amount to negligence. We are of the opinion that this demurrer should have been sustained, and the allegations stricken in so far as they charged

the acts set out as negligence. The placing of this embankment and excavation on its right of way by the defendant was not, and could not, be wrongful as to the plaintiff. The defendant had the right to place such an embankment and excavation on the right of way to prevent the drainage of water over its tracks which would, unless prevented, endanger the travel of its trains over the track at that point. It is not alleged that this embankment tended to or did obstruct the view of approaching motorists to this crossing, or that it interfered with proper travel on the highway. In the proper course of human activities, its right of way would not be used for automobile travel, and therefore the defendant was not bound to anticipate such use. The existence of this embankment is important in the present case as but a part of the normal environment, a mere condition, upon which the negligence of the defendant alone, or the negligence of the plaintiff alone, or their concurring negligent acts, operated to aid in causing the injury complained of, and for no other purpose.

■ The special demurrer directed to paragraph 8 (b) of the petition pointing out that the allegations contained therein were merely conclusions of the pleader, should have been sustained. "The office of a special demurrer is to eliminate all improper, superfluous, and unnecessary matter, or to compel the plaintiff to give the defendant definite and specific information with sufficient fullness and certainty to enable him to make his defense." *R. & D. R. Co.* v. *Mitchell,* 95 *Ga.* 78 (22 S. E. 124). General allegations of negligence though good as against general demurrer, for the reason that it is not to be presumed that either the judge would direct the jury to give, or that the jury would give, a verdict without sufficient proof of specific acts amounting to actionable negligence (*Murphy* v. *Lawrence,* 2 *Ga.* 257 (2)), are not sufficient to withstand a special demurrer. *Southern Ry. Co.* v. *Buchan,* 137 *Ga.* 105 (72 S. E. 896); *Macon, Dublin & Savannah R. Co.* v. *Stewart,* 120 *Ga.* 890 (48 S. E. 354); *Seaboard Air-Line Ry.* v. *Pierce,* 120 *Ga.* 230 (47 S. E. 581); *Sweat* v. *Foster,* 28 *Ga. App.* 360 (111 S. E. 66); *A. B. & A. Ry. Co.* v. *Whitehead,* 31 *Ga. App.* 89 (119 S. E. 539); *The Pullman Palace Car Co.* v. *Martin,* 92 *Ga.* 161 (18 S. E. 364); *Harris* v. *Southern Ry. Co.,* 129 *Ga.* 388 (58 S. E. 873); *Kemp* v. *Central of Ga. Ry. Co.,* 122 *Ga.* 559 (50 S. E. 465). It is manifest that the sweeping general allegation

"that said engineer failed to otherwise exercise due care in approaching said crossing in order to avoid doing injury to any person or property upon said crossing, and in order to avoid doing injury to petitioner at said crossing," is, standing alone, a mere conclusion of the pleader. It is true that immediately after the above-quoted words, the pleader appended the phrase "as alleged," but when the remainder of the allegations in the petition, including narratives of facts and specifications of negligence of the defendant, are considered, it is apparent that this general charge of negligence is not referable to, nor a conclusion drawn from, any of the allegations of fact contained therein, but is merely a blanket charge of negligence designed to cover any other acts of omission or commission of the defendant in approaching the crossing, which are not specifically set out and charged. There are contained in the petition ten separate specifications of negligence. Immediately before the general charge here being discussed it is charged that the defendant was negligent in failing to blow its whistle. Immediately after, among other things, it is charged that the defendant was negligent in that, after discovering the perilous position of the plaintiff, it failed to apply the brakes and stop said train; and, further, that defendant was negligent in operating said train at the rate of speed it did operate the same. While it is true that certain acts of omission and commission of the servants of the defendant railroad company in charge of the train in approaching said crossing are narrated in the petition, it further appears that in the paragraph which contains the specifications of negligence, including the one here being considered, each of said acts of omission and commission is made the subject of a specific charge of negligence. Therefore, this general averment can not be said to refer to any acts of the defendant which are set out theretofore in the petition as a narrative of the occurrence, since they are made the subject of separate specifications of negligence, and since this allegation is that the defendant "failed to *otherwise* exercise due care etc.," it must be held that it is not a general summation of the more specific designations of negligence. When properly construed the words "as alleged" must be held to refer to the fact of the injury to plaintiff and not to any of the acts of omission or commission charged against the defendant. This case therefore does not fall within the rule that "where a peti-

tion states the facts upon which the claim of negligence is based, a general allegation in the petition, following a statement of the facts relied upon to show negligence, will be construed to have reference to the particular facts pleaded; and, so construed, it is not subject to special demurrer." *Fuller* v. *Inman,* 10 *Ga. App.* 680 (74 S. E. 287). In *W. & A. R.* v. *Crawford,* supra, the word *"otherwise,"* was not used.

■ We think that the special demurrer to paragraph 8 (h) should also have been sustained. It does not appear from the petition, construed most strongly against the pleader, that the cross-arm signs erected by the railroad were erected after the erection of advertising signs along the highway and therefore with knowledge by the railroad that they could not be seen. The petition having alleged the proper erection of said cross-arm signs, the fact that private citizens or others had allowed the erection of advertising signs on their property which would interfere with the cross-arm signs legally and properly erected being seen by persons approaching such crossing will not be chargeable as negligence to the railroad.

■ This headnote does not require elaboration.

■ In view of the fact that the judgment must be reversed on the cross-bill because of the error of the judge in overruling certain special demurrers, which error was materially harmful, it becomes unnecessary to pass on the questions presented in the · main bill of exceptions. *Central of Ga. Ry. Co.* v. *Bridwell,* 34 *Ga. App.* 77 (128 S. E. 238). We may say however, that, even though the judge had committed no error in overruling the special demurrer, this court would not have upset his order granting the defendant a first new trial.

As appears from the statement of facts the trial judge granted the defendant's motion for new trial. His order set out that the motion was granted because "As a matter of law, under the evidence, the plaintiff is not entitled to recover." By Code, §§ 70-206, 70-208, a trial judge may, in the exercise of a sound legal discretion there vested, grant a new trial, although no errors of law may have been committed. The order of the trial judge in the present case is tantamount to a ruling by him that he should have either granted a nonsuit or directed a verdict for the defendant, neither of which he could of course do on a motion for new

trial. *Cook* v. *Attapulgus Clay Co.*, 52 *Ga. App.* 610 (184 S. E. 334). In granting the new trial on the ground that "as a matter of law, under the evidence, the plaintiff is not entitled to recover," i. e., that he should have granted a nonsuit or directed a verdict, it necessarily appears that he did exercise his discretion in granting a new trial. In Code, § 6-1608, it is provided: "The first grant of a new trial shall not be disturbed by the appellate court, unless the plaintiff in error shall show that the judge abused his discretion in granting it, and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." Therefore, the reasons which impelled the trial judge to exercise his discretion in granting a new trial are unimportant to this court; the only question for determination on exceptions to the granting of such motion being, under the provisions of the above section, whether he abused his discretion. In such case it can not be held that he abused his discretion unless the evidence demanded the verdict rendered, notwithstanding his judgment in the matter. It has therefore been held that this court will not determine the correctness of the reasons which he may assign for exercising that discretion vested in him by law. In *Weinkle* v. *Brunswick R. Co.*, 107 *Ga.* 367, 368 (33 S. E. 471), Judge Cobb said in this connection: "It may be now considered as settled that this court will not, under any circumstances, reverse a judgment granting a first new trial, whether the grant be general upon all the grounds of the motion or special upon one or more grounds only, or whether it be upon a ground which involves questions of evidence or upon a ground which involves purely questions of law; unless it is made to appear that no other verdict than the one rendered could possibly have been returned under the law and facts of the case. Unless the case can be brought within the exception just stated, it is useless for parties to bring before this court the judgment of a trial judge granting a first new trial." It could not be contended, under the facts of this case, that the verdict rendered for the plaintiff was demanded. Where, in such a case, a new trial is ordered by the trial judge, since upon a new trial the evidence would not necessarily be the same, this court will not determine whether the evidence demanded a verdict for the defendant. This question, in so far as the grant of a new trial is concerned, is rendered moot by the action of the trial judge in granting a new trial. We

would have contented ourselves by saying that the court did not err in the first grant of a new trial.

*Judgment reversed on the cross-bill of exceptions, main-bill dismissed. Broyles, C. J., and MacIntyre, J., concur.*

MacIntyre, J., concurring specially. I concur in the judgment of reversal, but can not agree to the ruling in division 4 of the majority opinion. I do not think that the allegation of the paragraph of the petition there dealt with can be said to be subject to the demurrer that it was a conclusion of the pleader, or that taking the allegations as true they could not amount to negligence.