28393. ATLANTA, BIRMINGHAM AND COAST RAILROAD
COMPANY *v.* THOMAS.

DECIDED DECEMBER 20, 1940.

*Hubert F. Rawls, Conyers, Gowen & Conyers, Brandon, Hynds & Tyndall,* for plaintiff in error.

*W. A. Wood, J. R. Walker, J. R. Walker Jr.,* contra.

GARDNER, J. 1. Special assignment of error (ground 2) is without merit. At about 1 a. m., the jury having retired to consider their verdict at about 11 o'clock the evening before, the court caused the jury to be returned into the court-room, when the following colloquy occurred: The judge: "Gentlemen, have you agreed upon a verdict?" Foreman: "No." Judge: "Gentlemen, if you desire to sleep some I've arranged with the bailiff to take you to his house and sleep you and give you breakfast and bring you back in the morning to consider the case further." Juror: "The majority would rather sit up and consider the case than go to bed." Judge: "Well, if you want to go on and consider the case you may." At 4 a. m. the jury brought in a verdict for the plaintiff. At the time the jury was called in by the judge and the above colloquy took place, the jury stood eleven to one for the plaintiff. Granting that the evidence was in conflict and about equal on the issues of fact, it does not appear that the above colloquy and return of the jury to consider their verdict were error. *Peavy* v. *Clemons,* 10 *Ga. App.* 507 (73 S. E. 756). See also *Alabama Great Southern Railroad Co.* v. *Daffron,* 136 *Ga.* 555 (71 S. E. 799, Ann. Cas. 1912D, 438); *Georgia Railroad* v. *Cole,* 77 *Ga.* 77; *Parker* v. *Georgia Pacific Railway Co.,* 83 *Ga.* 540 (10 S. E. 233); *White* v. *Fulton,* 68 *Ga.* 511, 513; *Golatt* v. *State,* 130 *Ga.* 18 (60 S. E. 107); *Ball* v. *State,* 9 *Ga. App.* 162 (70 S. E. 888).

2. A careful reading of the charge to the jury discloses that ground 5, complaining that the court failed to give in charge any rules as to the legal measure of damages against the defendant in

the event of recovery for the plaintiff, is without merit. Likewise, ground 17, complaining that as to the amount of damages to be allowed in the event of recovery, the court erred in charging that "the jury are not restricted to any fixed rule in the mode of estimating the value of the life of the deceased," is without merit, especially when set apart for criticism unaccompanied by the other parts of the charge bearing thereon. *Southern Railway Co.* v. *Alexander,* 62 *Ga. App.* 57, 58 (7 S. E. 2d, 747).

3. Ground 9 complains that it was error for the court to charge as follows: "Gentlemen of the jury, the first question for you to consider in this case is to consider the question as to whether or not the widow, that is, Mrs. Lonnie O. Thomas, Mrs. Annie Lizzie Thomas,—consider the question as to whether she is the lawful wife under the evidence submitted, of Lonnie O. Thomas." The criticism is that the mention of the plaintiff as the "widow" of the deceased was in effect an expression of opinion that the plaintiff had been the lawful wife of the deceased at the time of the homicide. The assignment is without merit. It is clear that the court was designating a "person" and not a "status," and was in the same connection directing the jury that the marital status was a question for their determination in finding whether the plaintiff had been the lawful wife of the deceased. At most such mention was an inadvertence. *Georgia Railway & Power Co.* v. *Howell,* 28 *Ga. App.* 798 (2) (113 S. E. 101).

4. The charge to the jury that, "The failure of a person approaching a railroad crossing, and unaware of the approach of a train, to stop, look, or listen is not a lack of ordinary care preventing recovery, as a matter of law, in a suit for ordinary negligence," being special assignment of error, ground 13, was not error for any reason assigned. *Carter* v. *Powell,* 57 *Ga. App.* 360, 368 (195 S. E. 466). Neither was it error for any reason assigned for the court to charge: "In this State it is not per se negligence for one not aware of the approach of a train to attempt to cross the track without stopping, looking, and listening; but in any case, in this case, it is a question for the jury to determine from the evidence and the facts and circumstances of the case whether or not Lonnie O. Thomas was negligent if he failed to stop, look, or listen before attempting to cross the defendant company's track." This assignment, ground 16, is without merit. *Carter* v. *Powell,* supra.

5. Ground 18 complains that the court erred in charging as follows: "When you ascertain what was the gross amount of the value of [Lonnie O. Thomas's] life it would be your duty to reduce that amount to its present cash value, figured at a rate of seven per cent. per annum. . . The present worth of a given sum is arrived at by dividing a given sum by one dollar, plus the legal rate of interest at seven per cent. for the given time." Under the authority of *Radcliffe* v. *Maddox*, 45 *Ga. App.* 676, 685 (165 S. E. 841), this assignment of error is without merit.

6. Ground 19 complains that the court erred in charging the jury as follows: "Upon approaching any railroad crossing or traveling such railroad crossing the operator of a motor vehicle shall at all times have said vehicle under immediate control, and shall not operate said vehicle at a greater speed than ten miles per hour, or a reasonable rate of speed." The court was attempting to charge the provisions of Code, § 95-1806, one of the sections under chapter 95-18. Under Code, § 95-1808, this charge was error as to the defendant in error, but was harmless as to the plaintiff in error. This assignment is without merit. See also *Carter* v. *Powell*, supra.

7. Ground 11 sets forth the following charge as error: "General damages are such as the law presumes to flow from any wrongful act, which the law terms a tort, and may be recovered without proof of any amount." The criticisms are that it was not adjusted to the issues in the case and was irrelevant, because general damages were not claimed or sought in this case, the suit being for specific damages as authorized by law, and that this charge was harmful to the defendant in that it tended to confuse the jury and to authorize them to find for the plaintiff on a theory not involved in the case. We look to the petition to determine what kind or genus of damages is sought. The plaintiff brought an action in tort for the homicide of her alleged husband, caused by certain alleged acts of negligence of the defendant, and laid damages in the sum of $24,500, as the present worth of the financial value of the decedent's life. The age of the decedent was alleged as well as his expectancy; also, his earnings, his health, physical and mental, and other pertinent matters bearing on the value of the life; also the probability of increased earnings in the future. We quote the final paragraph of the petition including the prayer: "The negligent acts of defendant, its agents, servants, and employees as here-

inbefore set forth, were the immediate and approximate cause of said homicide and injury herein complained of, and has damaged petitioner in the sum of twenty-four thousand and five hundred dollars ($24,500). Wherefore, plaintiff prays judgment against Atlanta, Birmingham & Coast Railroad Company for twenty-four thousand and five hundred dollars ($24,500), and that process issue requiring defendant to be and appear at the next term of the superior court . . to answer plaintiff's complaint herein." The above-mentioned damages were the only damages specified or sought. It is obvious that the effect of the prayer was for judgment for those damages which arose under the negligence of the defendant, in the sum named, but without specification as "general" or "special" either in the body of the petition or the prayer (though that would not necessarily have been the final test). It matters little, however, for the sufficiency of the prayer was ample to cover the damages as set up, without regard to any particular designation of the damages in any specific, generic term.

The exact charge defining damages was: "Damages are given as compensation for the injury done. Generally this is the measure where the injury is of a character capable of being estimated in money. General damages are such as the law presumes to flow from any wrongful act, which the law terms a tort, and may be recovered without proof of any amount." Then, in the application of the definitions given, the court instructed and guided the jury as follows: "In ascertaining the amount of damages to be allowed in this case, if you allow any, the jury are not restricted to any fixed rule in the mode of estimating the value of the life of the deceased. The age of the deceased, the health he enjoyed, the money he was making by his labor, his habits, his probable loss of employment, his voluntary abstaining from work, dullness in business, reduction in wages, the increased infirmities of age, with corresponding diminution of earning capacity, and other causes which might contribute in greater or less degree to decrease the gross earnings of a lifetime, may all be considered by the jury in determining the value of the life of the deceased. In estimating damages a proper allowance and deduction should be made in favor of the defendant for any diminution in income from labor which would have resulted, in your opinion, from any of those causes. In ascertaining the value of the life you will consider his age at

the time of his death, the length of time he would probably live, the amount per annum he was earning, as such amount may be developed from the evidence before you, and other facts which will enable you to arrive fairly and impartially, acting under your consciences and oaths as impartial jurors, at the value of the life." The court also instructed the jury as to the method for reducing the gross value of the life to the present worth.

Regardless of the definition of the damages, complained of as harmful because not applicable, it is obvious that the foregoing instructions cured any inaccuracy of definition or lack of application in the present case, and that the jury could not have been confused or misled. Moreover, it is clear that the genus of damages sued for was not "special" in the sense of doctor's bills or hospital accounts, or value of an automobile destroyed, or the loss of produce under a failure of carriage, or "general" damages as might arise from proof of libel or slander, or punitive or exemplary damages.

The right of recovery in this case was for the "full value of the life of the decedent, as shown by the evidence," Code, § 105-1302, "without deduction for necessary or other personal expenses of the decedent had he lived," Code, § 105-1308. While that for which recovery might be had was specific, the *amount* of recovery was variable, and alone determinable by the jury under the rules as given by the court, set out in part above. In *County of Bibb* v. *Ham,* 110 *Ga.* 340 (35 S. E. 656), error was assigned on a charge to the jury similar to the charge given in the instant case, as follows: "General damages are those which the law presumes to flow from an unlawful act; special damages are those actually shown to have been sustained. General damages may be recovered without proof of any special amount; special damages, in order to be recovered, must be proved as to amount." The court held that it could "see no error in this charge," and observed: "The present suit was for pain and suffering and *loss of time,* resulting from the personal injury to the plaintiff. She also sued for injuries which had disabled or affected her permanently, and as to such injuries it has been held that 'the future effect of the injuries is not special damages which must be alleged, but general damages which necessarily flow from injuries received.' . . Certainly a part if not all of the plaintiff's claims came within the class 'general damages,' which are said to include 'not only the direct expenses incurred by

the plaintiff, but *the loss of his time,* the bodily suffering endured, and any incurable hurt inflicted; for these may be classed among necessary results.'" (Italics ours.)

The present action is not one for the loss or injury to a property right in the life of the decedent, but is one compensatory to the plaintiff for the loss of his services had he lived, measured in terms of money according to his average yearly earnings for the duration of his expectancy, reduced to a present value. Under the reasoning and authority of *County of Bibb* v. *Ham,* supra, we think the damages sought fall primarily within the term "general damages," and not restrictedly within the term "special damages," and that no error was committed by the court in defining damages, as complained of by plaintiff in error. Since special damages were not defined, it followed that whatever the charge as to the damages sought, it was in part and parcel of the instructions which followed, and must have been so understood by the jury. This assignment is without merit.

8. The assignments of error on the general grounds are abandoned, save only as follows: "Because the evidence adduced upon the trial of the said cause demanded a finding by the jury that the plaintiff was not the legal widow of the deceased, Lonnie O. Thomas, because at the time of his death his prior marriage to Lessie L. Bennett was undissolved either by death or by legal divorce, and consequently the later marriage between Lonnie O. Thomas and the plaintiff was null and void as affecting the plaintiff, and that the determination of such issue against her precluded a recovery by the plaintiff." In addition, four special assignments of error are made, grounds 6, 7, 8, and 14, which, we think, under our view of the above assignment, are unnecessary to be related here. A widow may recover for the homicide of the husband the full value of the life of the decedent, as shown by the evidence. Code, § 105-1302. When the plaintiff alleged herself to be the widow of the decedent, and proved that she had, by marriage regularly solemnized, become the wife of the decedent; and had thereafter lived with him as his lawful wife (in this case some seventeen years, and had borne him several children), the presumption arose that she had been his legal wife. *Murchison* v. *Green,* 128 *Ga.* 339 (57 S. E. 709, 11 L. R. A. (N. S.) 702). "When a marriage has been shown, the law raises a strong presumption in favor of its legality. By

some of the authorities this presumption is said to be one of the strongest known to the law." *Brown* v. *Parks,* 173 *Ga.* 228, 237 (160 S. E. 238). There is, and was in this case, a presumption that the parties had the capacity to contract marriage. "The burden is on those who attack the validity of the [a ceremonial] marriage to show its invalidity *by clear, distinct, positive, and satisfactory proof.* There is in such case a presumption that the parties had capacity to contract marriage; and this presumption prevails until overcome by proof." *Addison* v. *Addison,* 186 *Ga.* 155 (2) (197 S. E. 232). *Murchison* v. *Green,* supra; *State Highway Board* v. *Lewis,* 46 *Ga. App.* 162 (167 S. E. 219) ; *Ward* v. *Ward,* 24 *Ga. App.* 695 (102 S. E. 35).

In the instant case the jury was authorized to find that the evidence adduced by the defendant was insufficient to overcome the presumption of the legality of the marriage of the plaintiff to the decedent. A witness, claiming to be a (former) legal wife of the decedent, testified that while she had purportedly obtained a divorce in Florida, she had not lived in Florida the length of time required by statute before bringing the libel for divorce; and that while she had sworn that she had lived in that State a designated time, she had not so lived there, and that she had committed perjury. An exemplified copy of the divorce proceeding was before the court. A presumption of the legality of the Florida divorce arose on proof of the decree of the Florida court granting a divorce to the witness and the decedent. The jury was authorized to find that the evidence of the defendant was insufficient to overcome the presumption of the legality of the divorce obtained in Florida. The jury had a right to discredit the witness, a confessed perjurer in the Florida divorce proceeding, an admitted bigamist, knowingly, she having herself remarried, and an interested party in the outcome of the present action, she having herself filed a suit for recovery, as the legal widow of the decedent, of the value of his life because of the alleged homicide. The jury had a right to find that the remaining evidence was insufficient to overcome the presumption of the legality of the Florida divorce decree, which evidence was more or less negative in character. Moreover, even had the evidence been affirmative and positive in character the jury was yet authorized to find in favor of the presumption of the legality of the Florida decree, notwithstanding the evidence was positive and uncontradicted.

This principle is in effect decided in *Whiddon* v. *Hall,* 155 *Ga.* 570 (6) (118 S. E. 347). The special assignments of error in this connection are without merit.

9. Grounds 3, 4, 12, and 15 are abandoned. The remaining assignments of error are without merit and need no discussion.

*Judgment affirmed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. On the trial the evidence showed the following undisputed facts: that L. O. Thomas (the deceased) and Lessie Lee Bennett were married in Pierce County, Georgia, on March 3, 1917; that on August 11, 1920, Lessie Lee Bennett Thomas obtained in Hamilton County, Florida, a divorce from the deceased; that in the divorce proceedings before the Florida court she alleged that she was then a resident of the State of Florida and had been continually such a resident for two years next prior to June 23, 1920; that the law of Florida then in force required that the complainant in a divorce action must have resided in the State of Florida for two years prior to the filing of the bill for divorce; that the plaintiff in the instant case was given by the deceased a copy of the Florida divorce decree before she was married to him, and that she had previously discussed with him said divorce. The first wife, Lessie Lee Thomas (who at the trial was Mrs. Lessie Lee Williams) testified that some time after her marriage to the deceased she desired a divorce from him, and discovered that it would take about eighteen months to get a divorce in Georgia, and was told that in Florida she could get one in a few days; that she had then never been in Florida, but soon afterwards she went to Jasper, Florida, and secured a lawyer there to obtain her divorce, that she stayed there three or four hours, returned to her home in Georgia, and in about thirty days received through the mail her decree of divorce; that other than that proceeding she never tried to secure a divorce from the deceased, and never had notice of any divorce proceeding brought by him against her. The lawyer who secured the Florida divorce was a witness for the defense. His testimony *on some immaterial points* was in conflict with that of Lessie Lee Thomas Williams, but it failed to contradict her positive testimony that she had not been a resident of the State of Florida for the required two years prior to the filing of the divorce proceeding. Moreover, two witnesses, who, the record shows, had lived in Pierce County, Georgia, for many, years and had intimately

known the deceased and his first wife, Lessie Lee Thomas, substantiated her testimony that she had lived in Georgia from the time of her marriage to the deceased until after the date of her divorce decree. Two other witnesses testified, without their evidence being contradicted, that they had examined the records of the proper courts in each county, both in Georgia and in Florida, where either Lessie Lee Thomas Williams or the deceased had lived, and that there was no record of a divorce having been granted to either of them, except the decree in Hamilton County, Florida. The rule is well settled that where a second marriage is established and it is shown that one so married had previously married a person living at the time of the second marriage, the presumption is that the first marriage had been dissolved by a valid divorce decree, and the burden is on the party attacking the validity of the second marriage to show that a valid divorce had not been granted. *Brown* v. *Parks,* 173 *Ga.* 228 (supra). However, I think that the evidence introduced by the defendant demanded a finding by the jury that the divorce in question was not a valid one, and therefore that the plaintiff was not the legal widow of the deceased and was not entitled to recover in this case.